No. 22-1644

THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

     Appellee,     Case No. 06-cr-242(LAP)

    -vs-

SIDNEY BRIGHT,

     Appellant.

Court of Appeals
For The Second Circuit
RECEIVED
SEP - 6 2022
BY:

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

BRIEF OF THE APPELLANT

STATEMENT OF JURISDICTION

  The district court had jurisdiction under 18 U.S.C. § 3231 and § 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. That court entered its order denying Sidney Bright's motion for a sentence reduction under § 404 on February 23, 2022. The court entered its order denying Mr. Bright's motion for reconsideration on July 13, 2022. Mr. Bright timely filed a notice of appeal on July 19, 2022. See Fed. R. App. P4(b)(1), (D)(6). This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## INTRODUCTION AND STATEMENT OF THE ISSUES

In May of 2010 following a jury trial, Mr. Bright was found guilty of two offense including conspiracy to distribute 50 grams and more of crack cocaine in violation of 21 U.S.C. § 846; and possession and using a firearm during and in relation to a drug trafficking crime, and aiding and abetting the same in violation of 18 U.S.C. § 924(c) and 2. Mr. Bright was sentenced to 400 months imprisonment under the murder guideline 2D1.1(d)(1) cross reference 2A1.1 and a consecutive sentence of 60 months for his 924(c) conviction for a total of 460 months of imprisonment.

In 2020 Mr. Bright filed a motion through counsel under the First Step Act requesting a reduced sentence. The district court concluded that Mr. Bright is ineligible for imposition of a reduced sentence, because in its order the district court set forth the procedural and factural history of the case and record detailing Mr. Bright's conduct and conduct for which Mr. Bright was acquitted for, in support of its conclusion that Mr. Bright should not be granted discretionary relief.

This appeal presents seven issues: Whether Mr. Bright is eligible for a sentence reduction pursuant to Section § 404 of the First Step Act; (2) Whether the district court abused its discretion when it failed to consider changes to the guideline and statutory penalties to determine whether a sentence reduction is warranted; (3) Whether Section § 401(c) of the 2018 First Step Act applies to Mr. Bright since he was sentenced "after" the Fair Sentencing Act went into law; (4) Whether the district court abused its discretion when it based its decision on erroneous assessment of the evidence; (5) Whether the district court unduly weighed the nature and circumstances of the offense and characteristics and the need for the sentence to deter future crime conduct and protect the public and defendant sentence was substantively unreasonable; (6) Whether the district court gave to little weight to the need to avoid unwarranted disparties among defendant's with similar records, who have been found guilty of similar conduct; (7) Whether the district court abused its discretion denying Mr. Bright compassionate release, because of the nature and circumstances of the offense.

2

STATEMENT OF THE CASE

## A.   The Procedural History of Mr. Bright's Convictions and Sentence

Sl:06-cr-242(WHP) was filed on July 9, 2008 in four counts against Mr. Bright (Count One) charged Bright with conspiracy to distribute crack cocaine, powder cocaine and herion in violation of Title 21 U.S.C. § 846; (Count Two) charged him with possession and use of a firearm during and in relation to a drug trafficking crime and aiding and abetting the same in violation of Title 18 U.S.C. § 924(C)(1)(A)(i) and 2; (Count Three) charged that in the course of committing the crime charged in Count Two, Mr. Bright caused the death of Heriberto Diaz through the use of a firearm, and aided and abetted the same in violation of Title 18 U.S.C. § 924(j) and 2; (Count Four) charged Mr. Bright with intentionally killing Diaz while engaged in a conspiracy distributing crack cocaine and powder cocaine, and aided and abetted the same in violation of Title 21 U.S.C. § 848(e)(1)(A) and Title 18 U.S.C. § 2.

## JURY VERDICT

Mr. Bright's trial commenced on May 10, 2010 and ended on May 19, 2010, whereas the jury returned a verdict of guilty on Count One with respect to crack cocaine, and Count Two. The jury acquitted Mr. Bright on the murder charges in Counts Three and Four and with respect to Count One, the jury did not find that Mr. Bright conspired to distribute and possess with the intent to distribute powder cocaine and herion.

## SENTENCING

On December 9, 2011, the district court sentenced Mr. Bright to 400 months imprisonment on Count One and sixty months on Count Two to run consecutively, followed by a lifetime of supervised release. Sentencing Tr. 31:25-32:1-4. For the

3

purpose of calculating Mr. Bright's sentencing range under the United States
Sentencing Guideline ("USSG"), the Court found that the drug conspiracy (Count
One) involved at least 2.8 kilograms of crack cocaine. Id. at 26:16-19. Despite
the fact that Mr. Bright was acquitted of the murder of Heriberto Diaz, the
Court determined that it was nevertheless authorized to consider the acquitted
conduct, finding that the government had proven Mr. Bright's involvement in the
murder by a preponderance of the evidence and that the contemplated upward
departure based on the acquitted conduct was not enormous. Id. at 27:11-28:16.
Taking into consideration the acquitted conduct, the court determined that the
base offense level was forty-three and the guideline sentence was life. Id. at
28:12-29:1; See U.S. Sentencing Guidelines Manual § 2D1.1(d)(1)(U.S. Sent'G
Comm'n 2011). The court however, decline to give a life sentence, explaining
that "rehabilitation" may be possible for Mr. Bright and instead imposed a
non-guideline sentence of 400 months on Count One followed by sixty months
imprisonment on Count Two, to be served consecutively, followed by lifetime
supervised release. Id. at 31:1-11; 32:1-4.

Mr. Bright's post-sentencing record confirms the court's assessment, Mr.
Bright had done everything in his power to rehabilitate himself, as demonstrated
by his clean disciplinary record and exceptional efforts to improve himself and
serve his community. In the words of the Reentry Affairs Coodinator at F.C.I.
Otisville, where Mr. Bright is incarcerated. Mr. Bright's behavior demonstrates
that he is actively making efforts to make amends for his crimes, while improving
his overall abilities so he can become a productive member of society. See EX (B)
Bridges Letter in Mr. Bright's First Step Act motion filed November 13, 2020.

B.    The Historical and Statutory Background of the First Step Act


On August 3, 2010, Congress enacted and the President signed into law,
the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010) to
address the longstanding and widespread recognition that the 1996 Anti-Drug Abuse
Acts penalty scheme of crack offense was based on false assumptions—unjustifiably
punished crack offenders for more harshly than others similarly-situated drug
offenders and had a disproportionate impact on African Americans. See Dorsey
v United States, 567 U.S. 260, 268-69 (2012); Kimbrough v United States, 552
U.S. 85, 96-98 (2007). Section 2 of the Fair Sentencing Act modified the statutory

4

penalties for violations of 21 U.S.C. § 841 involving crack cocaine by increasing the weight ranges to which § 841(b)'s statutory penalties apply. These changes wasn't retroactive to defendants who was sentenced prior to the enactment of the Fair Sentencing Act in 2010.

However, Congress wanted to make it right for people who didn't benefit prior to the enactment of the Fair Sentencing Act. So, on December 21, 2018, Congress enacted and the President signed into law the First Step Act of 2018, § 404 of which made Section 2 and 3 of the Fair Sentencing Act retroactive. Pub. L. No. 115-381, § 404, 132 Stat. 5184, 5222 (codified at 21 U.S.C. § 841 note). Under the Act "Congress authorized the courts to provide a remedy for certain defendants who bore the grunt of racially disparte sentencing scheme". United States v Chamber, 2020 WL 1949249 at *6 (4th Cir. 2020).

Section 404 provides that a court that imposed a sentence for a covered offense may on a motion, "impose a reduced sentence as if Section 2 and 3 of the Fair Sentencing Act...were in effect at the time the covered offense was committed". Pub. L. No. 115-391, § 404(b). A "covered offense" is defined as a violation of a Federal Criminal Statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act...that was committed before August 3, 2010". Id. § 404(a).

Courts are precluded from entertain a motion "made under this Section "in only two circumstances (1) if the sentence was previously imposed or previously reduced in accordance with the amendments made by Section 2 and 3 of the Fair Sentencing Act", or (2) if a previous motion made under this section was denied after a complete review of the motion on the merits. Pub. L. No. 115-391, § 404(c). Finally, nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

If a defendant is eligible, the district court decides in its discretion whether and to what extent, to impose a reduce sentence. In doing so, the court considers the applicable statutory limits the advisory guideline range, and the 3553(a) purpose factors, including the need to avoid unwarranted disparities between defendant's 'with similar records who have been found guilty of similar conduct' and the defendants post-sentencing conduct.

C.   Mr. Bright's Post-Sentencing Conduct and the First Step Act Motion

Mr. Bright was sentenced to 38 years and 4 months (460 months) and has

spent nearly 17 years in the custody of the Bureau of Prisons. Faced with a sentence of almost 40 years, which could be consider a life sentence at Mr. Bright's age, and could have caused Mr. Bright to give up on himself and on the prospect of any meaningful rehabilitation efforts. See United States v Barnes, No. 1:04-cr-00186-LAP at *4 (S.D.N.Y. July 7, 2020)(citing United States v Williams, No. 03-cr-759, 2019 WL 38442597 at *4 (E.D.N.Y. August 15, 2019). He did not...during his nearly 17 years in prison Mr. Bright has done more programs and educational initiaives, than most inmates have done in 25 to 30 years. Mr. Bright has completed over 75 programs and have maintained a flawless disciplinary record, worked consistently, and fully embraced the opportunities offered vocational and skill building training. See EX. C in Mr. Bright's First Step Act motion filed on NOvember 13, 2020. Inmate Progress Report.

On November 13, 2020, Mr. Bright filed a motion through counsel to reduce his sentence pursuant to the First Step Act. Then on February 4, 2022, Mr. Bright's counsel filed a supplemental motion to reduce his sentence, along with exhibits establishing Mr. Bright's significant rehabilitation as well as an update regarding Mr. Bright's health.

The District court denied the motion on February 23, 2022, which counsel was ineffective for failing to provide Mr. Bright's with the court's order in a timely fashion after the court's determination of the original motion. Which Mr. Bright didn't receive the courts order until March 10, 2022. In its order, the court set forth the nature and circumstances of the offense and the characteristics of Mr. Bright, detailing Mr. Bright's conduct, that he sold crack cocaine, powder cocaine and herion from 1995 to 2004, and that Mr. Bright routinely used guns to further and protect his drug business by providing firearms to his enforcers to shoot at buildings and competitors to drive them away. (Tr. 62-63, 90-91, 135). And Mr. Bright had other enforcers including Duane Beaty, Duval Briscoe, Elton Bright and Clifton Prince shoot at buildings as well (Tr. 133, 135.

The district court found that the most significant example of Mr. Bright's use of guns and violence to further his drug business was the murder of Heriberto Diaz. In 2002, Mr. Bright retrive a (380 firearm) the murder weapon that Steven Young was holding for Mr. Bright at Melvin Brown's apartment and then Mr. Bright than provided the firearm to Tyrone Glynn who was the shooter in the Diaz homicide. (Tr. 168-181, 923-935).

6

Mr. Bright filed a pro se motion on March 15, 2022 for a reconsideration on the court's order immediately after he receive the court's order from counsel on March 10, 2022, which the district court denied Mr. Bright's motion for reconsideration for a reduced sentence under the First Step Act which the court denied Mr. Bright's request on July 13, 2022.

## SUMMARY OF ARGUMENT

The question presented in this appeal are (1) whether Mr. Bright is eligible for a sentence reduction pursuant to Section 404 of the First Step Act (2) whether the district court abused its discretion when it failed to consider changes to the guidelines and statutory penalties to determine whether a sentence reduction is warranted (3) whether Section § 401(c) of the 2018 First Step Act applies to Mr. Bright since he was sentenced "after" the Fair Sentencing Act went into law (4) whether the district court abused its discretion when it based its decision on erroneous assessment of the evidence (5) whether the district court unduly weighed the nature and circumstances of the offense and charateristics and the need for the sentence to deter future crime conduct and protect the public and Mr. Bright's sentence was substantively unreasonable (6) whether the district court gave to little weight to the need to avoid unwarranted disparties among defendant's with similar records, who have been found guilty of similar conduct (7) whether the district court abused its discretion in denying Mr. Bright compassionate release, because the nature and circumstance of the offense and the characteristics of Mr. Bright.

## ARGUMENT

## I.   Mr. Bright is Eligible for a Reduced Sentence under the FSA

On January 23, 2020, the United States Probation Office filed a Supplement (PSR), indicating that Mr. Bright is eligible for a sentence reduction under the First Step Act of 2018, based on the new mandatory minimum on Count One. (Supplement Pre-Sentence Report January 23, 2020).

7

The government likewise concedes that Mr. Bright is eligible for resentencing on Count One as it qualifies as a "covered offense" under the First Step Act. Gov. Lt. 7. The government also concedes that the applicable mandatory minimum should be determined by the drug quantity found by the jury, in accordance with the rule articulated by the Supreme Court in <u>Alleyne v United States</u>, 570 U.S. 99, 103 (2013)(holding that any fact that increases a mandatory minimum sentence for a crime is an "element" of the crime and not a sentencing factor and must be submitted to the jury).

Therefore, Mr. Bright is eligible for relief under § 404 of the FSA because (1) he was convicted under a "covered offense", the penalties for which were modified by the Fair Sentencing Act (2) this court did not previously impose a sentence in accordance with the Fair Sentencing Act; and (3) this is Mr. Bright's first motion for relief under the FSA. See FSA § 404(c). The Second Circuit recently clarified that whether a defendant was sentenced under a "covered offense" within the meaning of the First Step Act turns on the statute under which a defendant was convicted, not the defendant's actual conduct. See <u>United States v Johnson</u>, 961 F.3d 181, 187 (2nd Cir. 2020).

Therefore, accordingly to the statutory minimum associated with the jury finding on drug quantity, Mr. Bright's sentence for Count One is reduce from 240 months to 60 months under 21 U.S.C. § 841(B)(1)(B). With an additional five years for violating 18 U.S.C. § 924(C)(1)(A); under the FSA the mandatory on Count One and Two is ten years as opposed to twenty-five years and Mr. Bright's supervised release must be reduced from life to four years.


II.   The District Court Abused It's Discretion and Committed A Procedural
      Error When It Failed To Consider Changes To The Guidelines and
      Statutory Penalties


In <u>Carlos Concepcion v United States</u>, 210 L. Ed 2d 1024 (2022), the Supreme Court ruled that when a district court is deciding whether and how much to reduce an individuals sentence based on outdated crack cocaine punishment, it may also consider other changes in facts and in law that took place since the original sentencing. And although the decision specifically discusses the crack

8

cocaine statutory penalty changes, the opinion is a ringing endorsement of broad judical discretion to decide what information judges rely on when sentencing or resentencing a defendant.

On December 9, 2011, the district court sentenced Mr. Bright to 400 months imprisonment, the court determined that the guidelines range on Count One the conspiracy was 360 months to life based on the drug quantity found by the court and Mr. Bright's leadership role. Tr. 28:5-11. For the purpose of calculating Mr. Bright's sentencing range under the advisory U.S.S.G. the court found that the drug conspiracy (Count One) involved 2.8 kilograms of crack cocaine. Id. at 26:16-19. Dispite the fact that Mr. Bright was acquitted of the murder of Heriberto Diaz at trial, the court determined that it was nevertheless authorized to consider the acquitted conduct and that the contemplated "upward adjustment" based on Mr. Bright's acquitted conduct was not an enormous upward adjustment. Id. at 27:11-28:16. Taking into consideration the acquitted conduct, the court determined that the base offense level was forty-three and the guidelines was life. Id. 28:12-27. See United States Sentencing Manual, § 2D1.1(d)(1). The court however declined to give a life sentence explaining that "rehabilitation" may be possible for Mr. Bright and instead imposed a non-guideline sentence of 400 months on Count One followed by sixty months on Count Two to be served consecutively followed by lifetime period of supervised release.

However, Mr. Bright recognized that the district court may consider acquitted conduct in deciding whether to reduce or resentence a defendant. What is relevant here is, at the time of Mr. Bright's original sentencing his guideline range was 360 months to life and now these baselines has since shifted, because when the government conceded that Mr. Bright is eligible for a sentence reduction under Count One as it qualifies as a covered offense under the First Step Act. Gov. Lt7. The government likewise concedes that the new applicable mandatory minimum sentence should be determined by the drug quantity found by the jury and not the district court. Gov. Lt7. The governments position is in accordance with the rule articulated by the Supreme Court in Alleyne v United States, 570 U.S. 99, 103 (2013)(holding that any fact that increase a mandatory minimum sentence for a crime is an "element" of the crime and not a sentencing factor and must be submitted to a jury).

Therefore, in this present case the application of the murder cross-reference provision 2D1.1(d)(1) cross-reference 2A1.1, raises Mr. Bright's base offense level from 28 to 43 in criminal history category III, increasing the prescribed

imprisonment from 97-121 months to life. Therefore, this is an astronomical upward adjustment in the offense level based on acquitted conduct and Mr. Bright doubt that the sentencing commission had intended that conduct of which the defendant was acquitted could lead to a life sentence instead of 10-years.

Mr. Bright's argument is consistent with the Second Circuit Court of Appeals in United States v Concepcion, 987 F.2d 369, 388 (2nd Cir. 1992)(that an astronomical increase in the offense level based on acquitted conduct is properly dealt with by considering a downward departure)( Concepcion, 983 F.2d at 389); See also United States v McDonald, 986 F.3d 402, 408-09 (4th Cir. 2021) (When imposing a new sentence under this statutory scheme, "a court does not simply adjust the statutory minimum it must also recalculate the guideline range"). Id. at 409...As the Supreme Court noted, Sentencing Guidelines "anchor the courts discretion in selecting an appropriate sentence. Molina Martinez v United States, 197 L. Ed 2d 444 (2016). Indeed, even non-guidelines sentences may still be explicitly selected with what was though to be applicable guideline range as a frame of reference. See United States v Fengons, 406 F.3d 138 (2nd Cir. 2001).

Therefore, Mr. Bright contends that the district court committed a procedural error and abused its discretion, because it had the power to depart downward and since the district court apparently did not consider whether such a departure was permissible the court should vacate the district courts order under the First Step Act and remand the matter for resentencing. Mr. Bright also contends that any finding that he was responsible for more than 50 grams of crack cocaine would be clearly erroneous. See Concepcion v United States, 210 L. Ed 2d 1024 (2022). See also Rosales-Mireles v U.S., 138 S. Ct. 1879 (2018).

III.    Section 401(C) of the First Step Act Applies to Mr. Bright


The Fair Sentencing Act was signed into law on August 3, 2010, but at the time Mr. Bright was sentenced in 2011 the new threshold were not applied to crimes committed before August 3, 2010 rendering Mr. Bright to be subject to sentencing under the pre-Fair Sentencing Act regime. As relevant here when Mr. Bright was sentenced in 2011 subsection (b)(1)(A) mandated an even higher penalty- twenty years to life- where the defendant had a prior felony conviction.

Specifically, at the time of Mr. Bright's sentencing, the enhancement was triggered by a "felony drug offense", defined as any offense punishable by imprisonment for more than one year. 21 U.S.C. § 802(44)(2018). But if Mr. Bright had been sentenced in accordance with the Fair Sentencing Act, his prior drug related conviction would not have triggered this enhanced penalty. When he was nineteen, Mr. Bright was sentenced to just 45 days imprisonment and five years probation. PSR at 48. To increase the mandatory minimum sentence after the Fair Sentencing Act, the defendant must have committed a "serious drug felony" which includes a conviction for which the defendant "served" a term of imprisonment of "more than 12 months". FSA § 401(a)(1)(i). Notwithstanding the fact that the court did not impose a mandatory minimum at sentencing, but according to the Supreme Court ruling in <u>Dorsey v United States</u>, at 281-82, that the new penalty structure applied to any defendants sentence after August 3, 2010 even if that offense was committed prior to that date. <u>Dorsey</u>, 567 U.S. at 281-82.

Therefore, since Mr. Bright was sentenced on December 9, 2011, and since the First Step Act provided additional relief by expanding the effect of the Fair Sentencing Act. Therefore, under current law Mr. Bright's mandatory minimum sentence on Count One would only be 5 years instead of 20 and his maximum sentence would be 40 years instead of life imprisonment. Which Mr. Bright's supervised release will also be reduced from life to 4 years and even if the court determines that Section § 401 (c) of the First Step Act does not apply to Mr. Bright his supervised release must still be reduced, because the advisory guidelines range for supervised release is eight years under § 5D1.2(c), because that is the term of supervised release required by the statute. See 21 U.S.C. § 841(b)(1)(B) and 851.

Therefore, the district court committed a procedural error and abuse its discretion, because the district court recognized that Mr. Bright was eligible for a sentence reduction under the First Step Act, when it determined that the 3553(a) factors. Specifically, the need to protect the public from Mr. Bright's future crimes, did not consider whether Section 401(c) applies and whether Mr. Bright's supervised release must be reduced. The court should therefore vacate the district courts order under the First Step Act and remand this matter because Section 401(c) applies to Mr. Bright and his supervised release must also be reduced from life to 4 years.

IV.    The District Court Abused Its Discretion When It Based It's Decisions
       On Erroneous Assessments of the Evidence


     Mr. Bright argues that the district court abused its discretion in denying
Mr. Bright relief under the First Step Act by detailing the nature and
circumstances of the offense and characteristics, that Mr. Bright routinely
used guns to further and protect his drug business by providing firearms from
1995 to 2002 to his enforcers Duval Briscoe, Elton Bright, Duane Beaty, Clifton
Prince and Steven Young to shoot at buildings and drug competitors. (Tr. 62-63,
90-91, 133, 135). The district court also held Mr. Bright responsible for the
murder of Heriberto Diaz, because the district court's position was that Mr.
Bright retrieved the murder weapon (firearm) that Steven Young was holding for
Mr. Bright at Melvin Brown's apartment and that Mr. Bright then provide the
firearm to Tyrone Glynn who was the shooter in the Diaz homicide on June 17,
2002.

     However, the district court abused its discretion when it denied Mr.
Bright relief under the First Step Act because Agent Pete Forcelli who was the
lead agent investigating Mr. Bright and the group supervisor Thomas P. Kelly of
the New York firearm field office, provided the government with detailed
information of an arrest of John Romero which was made by New York Police
Officer (NYPD) which relates to firearms trafficking by Mr. Bright and the
government witness Steven Young. This information reveals that Mr. Bright had
Steven Young transport firearms from Freddrickburg, Virginia to the Bronx of
New York to be used to commit acts of violence from 1995 to 2002. However, the
firearms in question was seized by law enforcement and John Romero was arrested
on May 2, 1996 for possessing those firearms that belong to Mr. Bright, therefore
Mr. Bright never provided firearms to his enforcers from 1995 to 2002 to shoot
at buildings and rivel drug dealers. The Second Circuit Court of Appeal held
that while ordinary when a gun is possessed during and in relation to a conspiracy
which is a continue offense, that possession is presumed to continue until the
underlying conspiracy offense had run its course, " it would defy all reasons
to give effect to that presunmption after such time as the guns in fact been
seized by law enforcement. See United States v Praddy, 725 F.3d 147 (2nd Cir.
2012). See 3502- T (Ex A).

Furthermore, the court should be aware that Duval Briscoe, Elton Bright and Duane Beaty Mr. Bright's alleged enforcer was in State Prison from 1995 to 2001-04 and it would have been impossible for Mr. Bright to have provided them with firearms from 1995 to 2002. Therefore, the district court abused its discretion when it based its decision on erroneous assessment of the evidence when it denied Mr. Bright relief under the First Step Act. See Ex. (A) Rap Sheet.

Most significally, Mr. Bright argues that the district court abused its discretion, because Mr. Bright never retrived a firearm from Melvin Brown's apartment or provided a firearm to Tyrone Glynn who was the shooter in the Diaz homicide, because the government witness Steven Young pleaded guilty for aiding and abetting the use, carrying and possession of a firearm, by providing that firearm to Tyrone Glynn who was the shooter in the Diaz homicide while he (Young) was distributing "<u>crack cocaine and herion</u>", and therefore Diaz's homicide cannot be considered relevant conduct to Mr. Bright's drug trafficking conviction under Count One of the indictment, because the government's position was that Mr. Bright caused the death of Diaz while distributing "<u>crack cocaine and powder cocaine</u>" not herion. See Steven Young plea allocution Count One and Seven and see Mr. Bright (PSR 31) Ex.(B).

Therefore, Mr. Bright argues that the district court erred and abused its discretion when it considered Diaz murder as a factor pursuant to Title 3553(a), because the district court error in applying the murder cross-reference in 2D1.1(d)(1) of the sentencing guidelines, for Mr. Bright's alleged involvement in the murder of Diaz; because in this case there was no evidence that Diaz murder occurred during, in preparation for or in the course of attempting to avoid detection for the "<u>herion conspiracy</u>" of which Steven Young was convicted and even if the murder was "<u>drug related activity</u>" as the district court found, the government alleged that it arose over a dispute of distributing "<u>crack cocaine and powder cocaine</u>", not herion. In addition there was no evidence that either of Young alleged accomplices in the Diaz murder were connected to the herion conspiracy. And therefore the Diaz's murder is therefore not relevant conduct under 1B1.3(a)(1) or (a)(2), because it cannot be grouped with Steven Young offense of conviction. See <u>United States v Taylor</u>, 813 F.3d 1139 (8th Cir. 2016) and also <u>United States v Wernick</u>, 691 F.3d 108 (2nd Cir. 2012)

13

The court reviews a district court application of the guideline ,
while factual determinations underlying a district court guideline calculation
are reviewed for clear error. See <u>United States v Cramer</u>, 777 F.3d 597 (2nd
Cir. 2015)(a district court commits procedural error when it...makes a mistake
in its guidelines calculations). See also <u>Carlos Concepcion v United States</u>,
210 L.Ed. 2d 1024 (2022).

Therefore, the court should vacate the district court's order under the
First Step Act and remand this matter, because the district abused its discretion
when it based its ruling on erroneous assessments of the evidence when it denied
Mr. Bright's relief under the First Step Act. See Young Plea Allocution,
S7:03-cr-1364 (LAK), and see Young disposition testimony held on August 19, 2011.
See also Ex. (B).

V.   The District Court Unduly Weighed the Nature and Circumstances of The
     Offense and Charactoristics And the Need For The Sentence To Deter
     Future Crime And Protect The Public And Mr. Bright's Sentence is
     Substantively Unreasonable

Mr. Bright argues that his sentence is substantively unreasonable, because
the district court unduly weighed the nature and circumstances of the offense
and the charactoristics of the defendant and the need to protect the public
from future crimes of defendant, but failed to sufficiently take into account
his advance age, his rehabilitation efforts when it considered his risk of
reoffending   and the unwarranted sentencing disparties.

A.   Nature of Bright's Offense

In denying Mr. Bright's First Step Act motion, the district court focuses
on his "offense conduct". As the district court noted in its opinion that
Mr. Bright was a leader of a violent drug trafficking enterprise, who sold crack
cocaine, powder cocaine, and herion from 1995 to 2004. And that Mr. Bright
routinely used guns to further and protect his drug business by providing
firearms to his enforcers to shoot at buildings and competiters to drive them
away and ordering the murder of Heriberto Diaz a drug rival for his commercial

goals. The 3553 (a) factors counsel against a reduction of sentence under the First Step Act and in favor of not "permitting this defendant to walk free in middle age".

This conduct while unquestionably subject to penalties under Count One that Bright was charged and convicted for does not stand out from similar cases with the court have applied sentences within or below the guideline range. See United States v Barnes, No. 1:04-cr-00186-LAP at (S.D.N.Y. July 7, 2020) (granting defendant convicted of trafficking crack cocaine, and conspiracy to kidnap and murder a sentence reduction to time served under the First Step Act) (citing United States v Williams, No. 03-cr-795, 2019 WL 384259701 *4 (E.D.N.Y. August 15, 2019)(determining that the defendant was eligible for resentencing and finding it appropriate to consider all applicable factors under 18 U.S.C. § 3553(a), as well as the defendant's post-sentencing conduct while in prison) See also United States v Guerrero, 52 F. Supp. 3d 643 (2nd Cir. 2014)(where the defendant was convicted of committing two murders while engaging in a drug trafficking and was sentenced to 25 years under the Fair Sentencing Act). See also United States v Martin, 2019 U.S. Dist. LEXIS 89940 (2nd Cir. 2019)(sentenced under the murder guideline 2D1.1(a)(1) and was sentenced to 210 months and received a reduce sentence under the First Step Act). See also Rose, 379 F. Supp. 3d at 233 (stating that the district court must "be able to consider the most recent evidence of a defendant's life and charateristics").

For Mr. Bright, the 18 U.S.C. § 3553(a) factors weigh in favor of a sentence reduction. Factors under § 3553(a) require the court to impose a punishment that reflects the seriousness of the offense; promotes respect for the law and provides just punishment; affords adequate deterrence to criminal conduct; protects the public from further crimes of the defendant; and provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). In weighing those factors, the court's most fundamental responsibility is to imposed a sentence that is sufficient, but not greater than necessary". See § 3553(a). Mr. Bright's current sentence of thirty-eight years and four months is more than what is necessary to achieve those statutory goals.

The Second Circuit prior cases carry Congress clear intent in passing the First Step Act to retroactivity apply the Fair Sentencing Act. Courts can now reduce long sentences in cases like Mr. Bright's, because Congress determined that shorter periods of incarceration sufficiently reflect and account for the

dangerous high-caliber nature of the crimes that those statutes now cover.
First Step Act of 2018, Pub. L. No. 115-391, § 404(a), 132 Stat. 5194, Fair
Sentencing Act of 2010, Pub. L. No. 112-220 §§ 2-3, 124 Stat. 2372.


The Need For Sentence To Deter Future Conduct And Protect The Public


    In addition to Mr. Bright's offense conduct the district court cited the
need to protect the public...from future crimes of the defendant as a basis for
maintaining Mr. Bright's 460 months sentence. The court reference the Honorable
Judge William H. Pauley III prior reasons why Mr. Bright was receiving the
sentencing he was receiving on December 9, 2011. The Honorable William H. Pauly
III stated that Mr. Bright should not be released from prison in his middle
years because of the offense conduct he has committed, but believes that
"rehabilitation" may be possible for Mr. Bright. Id. at 31:10-11, 32:1-4.
    Mr. Bright's post-sentencing record confirms the Honorable Judge William
H. Pauley III assessment, which the district court cannot determine whether or
not Judge Pauley would have reduce Mr. Bright's sentence, which points in Mr.
Bright's favor because Judge Pauley believed that "rehabilitation" may be
possible for Mr. Bright and Mr. Bright has done everything in his power to
rehabilitate himself, as demonstrated by his clean disciplinary record and
exceptional efforts to improve himself and serve his community. In the words of
the Reentry Affairs Coordinator at F.C.I. Otisville, where Mr. Bright is
incarcerated, Mr. Bright's "behavior demonstrates that he is actively making
efforts to make amends for his crimes, while improving his overall abilities so
he can become a productive member of society". See Ex. ("B"), Bridges Letter.
In Mr. Bright's First Step Act motion filed on November 13, 2020. These
individualized facts matter, and weigh heavily in favor of granting Mr. Bright
the relief he seeks.
    The court should also be aware that Mr. Bright wrote a letter to the
Honorable Judge Pauley and took full responsibility for his pass actions and
acknowledges that his crimes was serious and have cultivated the necessary skills
and emotional resources to become a productive member of society and is very
very remorseful of his pass acts. See Ex. ("O"). Mr. Bright's letter in his

First Step Act motion filed on November 13, 2020.

Similarly, there are no facts suggesting that Mr. Bright poss a risk beyond the one the district court measured and deem appropriate when it applied a 400 month sentence–rather than a life upward varience in 2011. Indeed, Mr. Bright has not incurred any convictions or meaningful infractions while in prison. Instead, Mr. Bright has made commendable progress in his post–sentencing rehabilitation efforts, he has stayed in touch with his six children and his supportive family members, received over 75 certificates and completed several educational courses. Relevant to Mr. Bright's post–incarceration risk to the public, Mr. Bright secured acceptance to the Defy Venture Program which will assist him with housing and employment when he is released. See <u>United States v Pepper</u>, 562 U.S. 476, 131 S. Ct. 1229 (2011).

<u>GROWTH AND AGING</u>

Mr. Bright is 54 years old and according to studies, "older adults (45 years and older) were less likely to recidivate than their younger peers...at the end of five-years observation period only 34% (n=2, 190) of those 45 and older were readmitted to prison, while 50.6% (n=15, 854) of the younger adult population released...had returned to prison during the same time. Sarah Rokes, et of Recidivism Among Older Adults, JUST. POL'J., spring 2018, a19 http://www.cjcj-org/uploads/cjcj/documents/recidivism_among_older_adults_correlates_of_prison_reentry.pdf. In general, arrest rates dropped to just 2% for people between ages 50 and 65. Rebecca Silber, et al, Aging Out: Using Compassionate Release 4. Address the Grouth of Aging and Infirm Prison Populations.

<u>BUREAU OF PRISON'S RISK AND NEEDS ASSESSMENT TOOL</u>

" <u>The Risk and Needs Assessment Tool</u>," the First Step Act mandates that the Bureau of Prison's ("BOP") identify the specific needs of each inmate, and specific risk each inmate poses. The individualized understanding of each inmates needs and risk will naturally allow for mechanism to provide support for specific needs and identify those "<u>low-risk inmates</u>" who may be eligible for early release or a sentence reduction, as well as pre-release custody,

recidivism reductions, and job placement programs. The BOP's answer to this mandate was to creat "the risk and needs assessment tool", titled "PRISON ASSESSMENT TOOL". Targeting estimated Risk and Needs, or PATTERN, for short. The creation of PATTERN was announced in July 2019, PATTERN is in essence, a predictive tool designed to predict the likelihood of general and violent recidivism for all inmates. PATTERN contains certain static risk factors, such as age and offense committed, and dynamic factors, such as participation or lack of participation in education and drug treatment programs.

Mr. Bright was assigned a Public Safety Factor ("PSF") for the following reasons because "the length of Mr. Bright's sentence". The risk level of Mr. Bright reoffendering is "low" meaning that Mr. Bright is not a threat to the public safety. See Ex. (C). Therefore, for all of the above listed information in regards to Mr. Bright being a danger to the public weighs in favor of a sentence reduction or release, because the district court's analysis regarding Mr. Bright's risk of reoffendering and its need to protect the public is not sufficiently compelling to support the degree of variance in this case. Instead the court analysis fails to distinguist Mr. Bright's case from "typical" cases featuring lower sentencing. (Quoting Kimbrough, 522 U.S. at 109).

## VI.    THE NEED TO AVOID UNWARRANTED SENTENCING DISPARTIES

The need to aviod unwarranted sentencing disparties sits at the heart of " substantive reasonableness". See United States v Lighting, 835 F. Appx. at 43 (6th Cir. 2020). Mr. Bright cites to the Commission "data" showing that most people who commits murder while engaged in a drug trafficking offense get sentenced to 240 months imprisonment (20-years). In doing so, Mr. Bright confirms this case is an outliner. See the average sentence imposed over the past five years for First Degree Murder. See United States Sentencing Commission, Interactive Data Analyzer and median sentence length 2017-2022, Guideline § 2A1.1, https://ida. USSC.gov/analytics/saw.dill? dashboard (last accessed July 14, 2022). (Observing that the average length of murder sentence was 254 months and the median 270 months). Therefore, Mr. Bright's sentence of 460 months should be reduced, to avoid unwarranted sentencing disparties.

Factor 18 U.S.C. § 3553(a)(6) states: The court must comply with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a). See United States v Conovo, 412 F.3d 331 (2nd Cir. 2005); See also United States v Booker, 543 U.S. 220 (2005). Among these factors is the need to avoid unwarranted sentence disparities among defendants with similar records who have

been found guilty of similary conduct. 18 U.S.C. § 3553(a)(6). Which Congress's primary concern is enacting § 3553(a)(6) was to minimize sentencing disparties nationwide. See United States v Joyner, 924 F.2d 454 (2nd Cir. 1991); See also United States v Williams, 2008 WL 183637 (2nd Cir. 2005). The court has held that although § 3553(a) does not require the district court to consider sentencing disparity among co-defendant's, it also does not prohibit them from doing so. So long as factors considered by the sentencing court are not inconsistent with those listed in § 3553(a) and are logically applied to the courts broad discretion in imposing a sentence within a statutory range. See United States v Wills, 476 F.3d 103(quoting United States v Poker, 166 L. Ed. 2d 329 (2006)).

Mr. Bright argues that there's a clearly disparity between the punishment that has been meted out to other drug traffickers who committed murder and acts of violence in this instance case and other cases with similar records who had been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6).

The government's witness, Steven Young, 03-cr-1364(LAK) who the government alleged was apart of Mr. Bright's drug trafficking organization plead guilty to 5 murders, gun trafficking, attempted murder of a federal witness, Hobb Act Robbery, and for distributing 50 grams and more of crack cocaine and herion from 1994 to 2004 and only received a sentence of 200 months imprisonment (16 years, 4 months).

Clifton Prince, 06-MAG-0005, who the government alleged was one of Mr. Bright's enforcers from 1995 to 2004, participated in the 1996 murder of Lamar Jones with the government witness Steven Young and only received a sentence of 60 months for distributing crack cocaine.

Shawn Young, 06-cr-495(RMB), who was the boss with the government witness Steven Young, and who was found guilty after a jury trial of distributing 4.5 kilograms of crack cocaine more than Judge Pauley held Mr. Bright guilty of distributing and also Shawn Young was found guilty of possession "firearm", and who had a base offense level of life with the penalty enhancement and only was sentence to 17 years of imprisonment and was released early under the First Step Act.

United States v Barnes, No. 1:04-cr-00186-LAP at (SDNY, July 7, 2020) (granting defendant conviction of trafficking crack cocaine and conspiracy to kidnap and murder a sentence reduction to time served under the First Step Act);

19

United States v Powell, No. 3:99-cr-264-18 (VAB), 2019 WL 4889112, at 10
(D. Conn., October 3, 2019)(granting time served under FSA for murder
cross-reference offender convicted for involvement in crack cocaine conspiracy);
See United States v Warren, No. 3:95-cr-00147-01, 2020 WL 3036011 at *2-3
(S.D.W. Va., June 5, 2020)(same); United States v Anderson, Cr. No. 0:04-353
(CMC), 2019 WL 4440088, at *1,4 (D.S.C., September 17, 2018)(granting a reduced
sentence under FSA for murder cross-reference offender); United States v Guerrero,
52 F. Supp. 3d 643 (2nd Cir. 2014)(where the defendant was convicted of
committing two murders while engaged in a drug trafficking and was sentenced
to 25-years under the Fair Sentencing Act). See also United States v Martin,
2019 U.S. Dist. LEXIS 89940 (2nd Cir. 2019)(sentenced under the murder guideline
2D1.1(d)(1) and was sentenced to 210 months and received a reduced sentence
under the First Step Act). Therefore, in light of the FSA and its underlying
goal of reducing over-incarceration, and Mr. Bright's conduct since sentencing,
Mr. Bright asks the court to remand this case back to the district court because
the district court put to much weight on the need to protect the public and
Mr. Bright's offense conduct, to deny Mr. Bright relief under the First Step Act.

Therefore, Mr. Bright argues that after the analysis of § 3553(a)(6), this
factor weighs in favor of a reduction in sentence. As this court had stated in
other First Step Act motions that were granted in regard to 3553 factors. The
government or the district court has not pointed to one thing in Mr. Bright's
institutional record or criminal history that shows that Mr. Bright would continue
to be a risk or pose a threat to the community or public safety. In fact Mr.
Bright's prison record shows that Mr. Bright is most not likely to commit any
more crimes or being a danger to society. Therefore, the government should not
be allowed to continuosly offer as their only argument crimes that Mr. Bright
committed nearly 20 years ago, and that Mr. Bright's rehabilitation should count
for nothing for which the district agreed with that rational.

Working with unrelenting dedication to acknowledge and grow from his pass
mistakes. Mr. Bright has cultivated the necessary skills and emotional resources
to become a productive member of society. See Ex. O, Mr. Bright's Letter in his
First Step Act motion filed on November 13, 2020.

A.    Mr. Bright's Release Plan Provides for a Stable Home Environment

If released, Mr. Bright plans to live with his mother, Francis Bright, who

resides in the Bronx, New York. She offers a strong support system and is prepared to help her son navigate his re-entry into society. Mr. Bright also has the benefit of support from a wide network of family and friends who have witnessed his growth while incarcerated. Their letters attest to his rehabilitation. See Ex. L, collected letters of Support.

VII.   THE COURT SHOULD GRANT COMPASSIONATE RELEASE TO MR. BRIGHT BECAUSE OF THE HEIGHTENED RISK OF HARM DUE TO THE COVID-19 PANDEMIC

Prior to the enactment of the First Step Act, only the Bureau of Prisons could move a court to reduce a prisoner's sentence due to extraordinary and compelling reasons. However, the First Step Act amended the compassionate release statute to allow a prisoner to request relief directly from the court, either after he has fully exhausted all administrative remedies to request that the BOP bring a motion, " or upon the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier". 18 U.S.C. § 3582(C)(1)(A)(2018); See also United States v Haney, 454 F. Supp. 3d 316, 321 (S.D.N.Y. 2020); See also United States v Brooker, 976 F.3d 228, 237 (2nd Cir. 2020).

A.   Mr. Bright requeste that the warden of FCI-Otisville make a motion on his behalf, and his request was denied on October 20, 2020. See Ex. N, Letter from acting warden Le Master. As more than thirty days have lapsed since the warden's receipt of the request. Mr. Bright moved the district court directly for relief under § 3582(C)(1)(A), which the district court denied Mr. Bright's request on February 23, 2022.

According to the Center for Disease Control Prevention, COVID-19 is most likely to cause serious illness and death in individuals with certain underlying medical conditions. When the district court sentenced Mr. Bright in 2011, it was clear that Mr. Bright's 38 years and 4 month sentence was symbolic for two reasons; deterrence and public saftey. Over the past sixteen plus years circumstances have changed. This court must now consider whether keeping Mr. Bright incarcerated, in light of his debilitating, chronic medical conditions such as high blood pressure, high cholesterol, pre-diabetes, hypertension,

sickle cell trait and anemia, is truly in furtherance of the statutory
sentencing goals and our society's value and understanding of compassion. Given
his health complications, Mr. Bright falls into this category of heightened
vulunerability. See EX. (A), Clinical Director Letter in Mr. Bright's First Step
Act Motion filed on November 13, 2020. Recent news reports from federal prison's
indicate that the institutions are unable to provide medical care "in the most
effective manner" to their most vulnerable inmates". See 18 U.S.C. § 3853(a)(2)(D).
In general, COVID-19 presents a threat to incarcerated populations across the
United States, as the close proximity of inmates make "social distancing...
impossible". See United States v Haney, 454 F. Supp. 3d at 323 (2nd Cir. 2020).
FCI-Otisville is unfortunately no exception.

B.    EXTRAORDINARY AND COMPELLING CIRCUMSTANCES EXIST

       It is within the district court's discretion to consider whether any
reasons raised by the defendant are extraordinary and compelling. United States
v Brooker, 976 F.3d 228, 236 (2nd Cir. 2020). "The court need not find a single
dispositive circumstance to determine that extraordinary and compelling reasons
exist, rather it may consider whether the totality of the circumstances justify
such a finding". See United States v Piggott, No. 94-cr-417 (SHS), 2022 U.S.
Dist. LEXIS 5293, 2022 WL 118632 at *2 (S.D.N.Y. January 12, 2022).

       Mr. Bright's submission argues that the passage of the First Step Act, should
be granted because (1) His health warrants a reduced sentence or time-served (2)
The district court abused its discretion, when it based its decision on erronous
assessment of the evidence (3) His rehabilitation since he's been incarcerated,
and (4) The harsh conditions of confinement during the COVID-19 pandemic justified
for a sentence reduction or time-served.

I.    MR. BRIGHT'S HEALTH STATUS AND MEDICAL CONDITION

       Mr. Bright's medical condictions establish extraordinary and compelling
circumstances because he suffers from high blood pressure, high cholesterol,
pre-diabetes, acute kidney, hypertension, sickle cell trait and anemia. According
to the Centers for Disease Control and Prevention ("CDC"), COVID-19 is most
likely to cause serious illness and death in individuals with certain underlying
medical conditions. Given Mr. Bright's health complications he falls into this

22

category of heightened vulnerability. See EX. A, Clinical Director Letter in Mr. Bright's First Step Act Motion filed on November 13, 2020. And with the recent variants of concern OMICRON VARIANTS constitutes as extraordinary and compelling reasons to grant relief.


II.   The District Court Abused It's Discretion When It Based It's Ruling on Erroneous Assessments of the Evidence

A.   The district court abused it's discretion when it failed to properly consider the facts presented by defendant Bright which showed that; Agent Pete Forcelli who was the lead agent investigating Mr. Bright and the group supervisor Thomas P. Kelly of the New York firearm field office provided the government with detailed information after interviewing the government witness Steven Young about an arrest of John Romero which was made by the New York Police Department (officers) which relates to firearm trafficking by Mr. Bright and the government witness Steven Young. This information revealed that Mr. Bright and the government witness Steven Young was distributing narcotics in Freddrickburg, Virginia, and in the course of that offense Mr. Bright had Young transport firearms, including the 380 firearm used in the Diaz'a homicide on June 17, 2002 from Freddickburg, Virginia to the Bronx of New York to be used to commit acts of violence from 1995 to 2002 to further the charged conspiracy under Count One of the indictment. Which the government witness Steven Young plead guilty to. See Steven Young felony information S7:03-cr-1364(LAK), which is under seal and therefore Mr. Bright is requesting the court to do an incamera review of Young's felony information.

However, while Agent Forcelli and Agent Kelly was investigating the government witness proffer statement, they discovered that the firearms in question was seized by the New York Police Department (Officers) and John Romero was arrested on May 2, 1996 for possession of those firearms that belong to Mr. Bright...And therefore, Mr. Bright never provided firearms to his enforces from 1995 to 2002 to shoot at buildings and competitors on city streets or provided a firearm to Tyrone Glynn who was the shooter in the Diaz's homicide, because the firearm was seized six years prior to the death of Diaz. See 3502-T (Agent Pete Forcilli and Agent Thomas Kelly investigation information). See EX. (A).

B.    Furthermore, the court should also be aware that Mr. Bright was never charged or convicted of distributing narcotics in Freddrickburg, Virginia with Steven Young and since the firearms in question is interwind with the drug trafficking offense in Freddrickburg, Virginia, therefore the district court abused its discretion, because Heriberto Diaz homicide cannot be considered as relevant conduct to Mr. Bright's drug trafficking conviction under Count One of the indictment, because in order to find Mr. Bright guilty of possession of firearms it must be during and in relation to the drug trafficking offense. Therefore, Mr. Bright has shown extraordinary and compelling reasons why his sentence should be reduced or he should be sentenced to time served.

C.    Most significantly, Mr. Bright argues that the district court abused its discretion when it denied Mr. Bright compassionate release, because Mr. Bright never provided firearms to his alleged enforcers Elton Bright, Duval Briscoe and Duane Beaty to shoot at buildings and competitors on city streets, because they all was incarcerated from 1995 to 2002 and also Mr. Bright never retrived a firearm from Melvin Brown apartment or provided a firearm to Tyrone Glynn who wasthe shooter in the Diaz homicide, because the government witness Steven Young plead guilty for aiding and abetting the use, carrying and possession of a firearm, by providing that firearm to Tyrone Glynn while he (Young) was distributing "crack cocaine and herion", and therefore Diaz's homicide cannot be considered relevant conduct to Mr. Bright's drug trafficking conviction under Count One of the indictment, because the government proffer of facts was that Mr. Bright caused the death of Diaz by aiding and abetting the use of a firearm, by providing a firearm to Tyrone Glynn while distributing "50 grams and more of crack cocaine and 5 kilograms and more of powder cocaine" and not "herion". See EX. (A), Rap Sheets of Elton Bright, Duval Briscoe and Duane Beaty and see EX. (B), Steven Young plea allocution on Counts One and Seven and also see Mr. Bright's PSR at 31.

Therefore the district court erred and abused its discretion when it considered Diaz's murder as a factor pursuant to Title 3553(a) to deny Mr. Bright compassionate release, because the district court erred in applying the murder cross-reference in 2D1.1(d)(1) of the Sentencing Guidelines, for Mr. Bright's alleged involvment in the murder of Diaz, because in this case there was no evidence that Diaz's murder occurred during, in preparation for or in the course of attempting to avoid detection for the "herion conspiracy" of which

24

Young was convicted, and even if the murder was "drug related activity" as the district court found, the court alleged that it arose over a dispute of distributing "crack cocaine and powder cocaine, not herion". In addition, there was no evidence that either of Young's alleged accomplices in the Diaz murder were connected to the "herion conspiracy". And therefore the Diaz's homicide is therefore not relevant conduct under 1B1.3(a)(1) or (a)(2), because it cannot be grouped with Steven Young's offense of conviction. See United States v Taylor, 813 F.3d 1139 (8th Cir. 2016).

Therefore, the district court abused its discretion when it failed to properly consider the facts presented by Mr. Bright and Mr. Bright has shown extraordinary and compelling reasons why his sentence should be reduced or he should be sentenced to time served, and therefore the court should vacate the district court order and remand the matter, to also permit the district court the opportunity to do an incamera review of Steven Young felony information. S7:03-cr-1364(LAK) which is under seal.

III.   MR. BRIGHT HAS CONTINUALLY DEDICATED HIMSELF TO MENTORSHIP AND SELF-IMPROVEMENT WHILE INCARCERATED

Mr. Bright has been a model prisoner as evidenced by the fact that prison officials in the best position to assess Mr. Bright's transformation while incarcerated all attest to his progress. While incarcerated, Mr. Bright has been steadily employed in a variety of departments including the visiting room, food service, and UNICOR. See EX. (C), Inmate Progress Report filed under the First Step Act on November 13, 2020. He has also received over seventy-five certificates of achievements for his completion of continuing educational programs in self-improvement, vocational skills, and victim impact programming. See EX. (D), Certificates of Achievement. Most notably, Mr. Bright has dedicated his time to mentorship programs designed to help inmates make positive decisions both while incarcerated and after release, serving as a positive mentor to other inmates. See EX. (E), Case Manager Mr. Best letter in Mr. Bright's FSA motion filed November 13, 2020. In 2013, Mr. Bright completed a five week victim impact workshop and a sixteen week victim impact program designed to help offenders recognize and internalize the consequenses of their conduct and develop empathic connections with their victims. After completing

25

this training, Mr. Bright has become actively involved with the program and served as a facilitator for the five-week and sixteen week workshop, helping others acknowledge the harm that their actions caused their victims and navigate a path away from crime. In this role, Mr. Bright has drawn from his experience to inspire others to work toward their own rehabilitation. As one participant explained, "seeing guys like Mr. Bright facilitate and pour out his heart out really struck a nerve because I can relate to his background and I can imagine who he once was and see him now the man he is today show me this program can rehabilitate even people like us who were once criminal minded". EX. (F), Mendez Letter and also EX. (G), Davillo Letter in Mr. Bright's First Step Act motion filed on November 13, 2020.

Beyond his victim impact work, Mr. Bright has served as a Suicide Watch Companion for the Psychology Department at FCI-Otisville for the past five years. This role requires empathy and ease communicating with both staff and inmates. Mr. Bright has consistantly showed himself to be worthy of the trust extended by his supervisors, proving to be "a reliable member of the team". Who consistantly conducts himself in a thoughtful and respectful manner". See EX. (J), Staff Psychologist Letter. Even in this complex and challenging position, Mr. Bright's commitment is unwavering, and his "contributions have made a significant positive impact on the FCI-Otisville population and the services provided by the Psychology Department". Mr. Bright's participation in the Victim Impact Program and his service as a Suicide Watch Companion is completely voluntary. His commitment to these programs reflects his serious intent to turn over a new leaf- to transform himself and give back to the community while incarcerated. See EX. (C), Inmate Progress Report in Mr. Bright's FSA motion filed on November 13, 2020.

Reviewing Mr. Bright's history in prison, a clear pattern develops-he does not shy away from challenge, and after mastering the material, he takes the opportunity to share what he has learned with his community. For example, after completing the Positive Mental Attitute Effective Alternative Program, he became a Peer Assistant, teaching inmates how to change patterns of negative thinking to clear space for more productive and positive mental habits. He also serves as a facilitator for Doing Time with the Right Mind and Getting Out by Going In programs designed to help inmates adjust to incarceration, learn strategies for managing stress and anger, and develop conflict resolution skills. See EX. (C), Inmate Progress Report.

26

In addition to this rehabilitation programming, Mr. Bright obtained his GED in 2012 and has completed a variety of classes gaining vacational (carpentry, HVAC, electrical, and floor care) and career (writer, workshop, advance computer skills, certificate in career readiness from Boylar University). See EX. (K), Education Transcript. He has shown a commitment to his health, taking exercise classes and learning about managing chronic health issues. In 2013, he completed a Drug Education Program, which examined both the impact of substance abuse on one's physical and mental health and its effects on family members and society more broadly. See EX. (C), Inmate Progress Report. Finally, Mr. Bright received a certificate of Achievement for completing the twelve-step program and attending ten sessions of Alcoholics Anonymous. SeeEX. (D), Certificates of Achievement in Mr. Bright's motion filed on November 13, 2020.

Mr. Bright has demonstrated significant rehabilitation and can no longer benefit from educational or vocational training, medical care, or other correctional treatment provided by the BOP. See § 3553(a). Further Mr. Bright's criminal history demonstrates that he is not a recidivism risk or a significant danger to the public. Id. at (a)(2)(B), (C).

## IV.    THE HARSH CONDITIONS OF CONFINEMENT

While Mr. Bright's health conditions may become less important if and when the pandemic ceases, the pandemic itself has not only posed a threat to Mr. Bright's health, but has made his incarceration more harsh, and effectively more puntive, than could have been expected by the sentencing court. "For someone with Mr. Bright's health profile, the risk of suffering severe health consequences if he contracts COVID-19 again or the OMICRON variant coupled to the severe conditions imposed by the concomitant  lockdowns and restrictions that are necessary to ensure his safety, means that " the actual severity of his sentence as a result of the COVID-19 outbreak exceeds what the sentencing court anticipated". See Rodriquez, 492 F. Supp. 3d 311 (quoting United States v Mel, No. TDC-18-0571, 2020 U.S. Dist. LEXIS 74491, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020). Indeed, many courts, including this court, have taken into consideration the harsh and difficult conditions of detention during the pandemic during sentencing hearings. See United States v Flores-Alberto,

No. 20 Crim. 668 (07/19/21 Sentencing Trat 12:5-12)(" Detention during this
pandemic has been extremely difficult...There's no question that it's been more
harsh than in normal times").

The COVID-19 pandemic has made Mr. Bright's imprisonment far more grueling
than Congress, or Judge Pauley had reason to anticipate...AS courts have widely
recognized in granting compassionate release motions since March 2020, the
unexpected rigors of incarceration during the pandemic present "extraordinary
and compelling" reasons that can justify a sentence reduction under § 3582(C)(1)(A).

The COVID-19 pandemic is extraoridinary and unprecedented in modern times in
this nation. The crowded nature of federal prisons in particular has presented
an outsized risk that COVID-19 contagion, once it gains entry, will spread. In
that respect, COVID-19 has posed a heightened health risk to all inmates. Mr.
Bright was infected with COVID-19, but recovered and could have been a death
sentence for Mr. Bright.

In particular, the pandemic has subjected all inmates to far more restrictive
conditions of confinement than normal incarceration. It had limited inmates'
access to visitors such as family to counsel, and to rehabilitative, therapeutic,
and recreational programs. And it has given rise to fears of infection and
worse by inmates. In these respected pandemic has spawned conditions of
confinement far more punishing than what could have been expected of the time
of Mr. Bright's sentencing.

In light of these circumstances, this court has recognized that " a day
spent in prison under extreme lockdown and in legitimate fear of contracting a
once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed
by on ordinary day in prison" and "while such conditions are not limited as
punishment, incarceration if such circumstances is, unavoidably, experienced as
more punishing". See United States v Lizard, No. 11-cr-1032 (PAE), Dkt. 2532 at
7, 2020 U.S. Dist. LEXIS 188147 (S.D.N.Y. 2020); See also United States v
Rodriguez, 492 F. Supp. 3d 306 (S.D.N.Y. 2020)(" The pandemic, aside from posing
a threat to [a defendant's] health, has made [a defendant's] incarceration
harsher and more punitive than would otherwise have been the case. This is
because federal inmates, as prime candidates' for the spread of the virus, have
had impose onerous lockdowns and restrictions that have made the incarceration
of prisoners far harsher than normal. See United States v Salamo, No. 11-cr-0065-
01 (JSR), 2020 U.S. Dist. LEXIS 86977, 2020 WL 2521555, at *3 (S.D.N.Y. 2020)
(" Noting that the BOP has taken a number of steps to mitigate the spread of the

virus in federal prisons...including restrictions on visitors, restrictions on gatherings...and lockdowns lasting at least 14 days").

The Court accordingly in cases in which it has determined that a reduced term of imprisonment is compatible with the § 3553(a) factors has granted compassionate release under § 3582 to numerous inmates in light of the health risks, and grueling conditions of confinement, presented by COVID-19. See Hernandez, 451 F. Supp. 3d at 303-04 (granting compassionate release to defendant with non-severe asthma who had served about half of his 24 months sentence. For similar reasons, numerous courts acting under § 3582, while not granting immediate release, have reduced sentences. See Rodriguez, 492 F. Supp. 3d at 311 (granting sentence reduction for defendant in part due to fact that the pandemic made "Rodriguez's incarceration harsher and more punitive than would otherwise would have been the case"). United States v Marmolejos, No. 19-cr-626 (PAE), Dkt. 25 at 32-33 (S.D.N.Y. 2020)(granting a sentence "further below the guidelines sentence it otherwise would have been on account of the conditions" created as a result of the pandemic)...exacts more punishment for an incarcerated defendant than a day in ordinary condictions").

Mr. Bright similarly qualifies for some reduction of sentence on this analysis. To date, he has spent more than 2 years in custody during COVID-19, at FCI-Otisville. The conditions at that facility, as elsewhere, have been restrictive in light of the pandemic. Here at FCI-Otisville, all vistations were canceled and inmates were only allowed to leave their housing units "to obtain grab and go meals, attend scheduled medical appointments and attend General Education Degree (GED) classes. These harsh conditions of confinement consistent with the experiences at other prisons, have thus been far more punishment than intended. See United States v Rodriquez, No. 16-cr-07 (AJN), 2020 U.S. Dist. LEXIS 241810, 2020 WL 7640539, at 4 (S.D.N.Y. 2020). It is, further, reasonable to project that even with the pandemic obating, conditions of confinement will remain restrictive for some time to come.

## MR. BRIGHT'S RELEASE PLANS, PROVIDES FOR A STABLE HOME ENVIRONMENT

If released, Mr. Bright's plans is to live with his mother who is 84 years old and will care for her who is suffering from health issues, and that he has been offered employment at Defy Venture. Mr. Bright's plans is to also mentor

young people and to share his story as an example of change. See <u>United States</u>
<u>v John</u>, No. 15-cr-208 (CM), 2020 U.S. Dist. LEXIS 210355, 2020 WL 6581217, at
*2 (S.D.N.Y. 2020)(under <u>Brooker</u>, court's may consider the myraid of family
circumstances that might warrant granting compassionate release, and granting
compassionate release where the circumstances are extraordinary and compelling
beyond the family separation incurred as a matter of course by incarceration).


### THE REMAINING OF SECTION 3553 FACTORS


There can be no dispute that Mr. Bright's conduct was incredibly serious.
Mr. Bright agree, writing that he heard what the Honorable William H. Pauley
III, determined that the crimes herein were extremely grave and the defendant
needs to be punished significantly.

ON the other hand following the Supreme Court's decision in <u>Chavez-Mezo</u>,
138 S. Ct. at 1964 (2018), this court considered the level of explanation
required by a district court in resentencing, where appellants presented
extensive post-sentencing mitigating evidence. Mr. Bright argues that he is
entitled to a sentence reduction and presented a plethora of post-sentencing
mitigating evidence to support his motion. Mr. Bright argues that the district
court failed to consider the appellants mitigating evidence.

The explanation the district court provided was merely a recitation of Mr.
Bright's original behavior. That is not the standard that the Supreme Court
articulate for a sentence reduction motions. The district court was content to
memorialize Mr. Bright's transgressions without giving any weight to the multitude
of redemptive measures that Mr. Bright has taken since he was initially sentenced
to 460 months in prison...The district court must provide an individualized
explanation why Mr. Bright's step toward rehabilitation are meaningless, and
should count for nothing, because Mr. Bright has spent nearly two decades in
prison where, despite his lengthy prison term, he utilized the resources and
programming he could access in prison to work toward rehabilitation. See <u>United</u>
<u>States v Martin</u>, 916 F.3d at 397 (4th Cir. 2018)(that kind of post sentencing
mitigating evidence is enough to required a district court to provide an
explanation on the record of its reason for deciding a sentence reduction motion).

In Chief Judge Roger Gregory's Opinion: In the Fourth Circuit wrote:

> " I recognize the breadth of 18 U.S.C. § 3582(c)(1)'s
> text not to discount the seriousness of some criminal
> offenses, but to give effect to the policy choice that
> Congress made plain: When extraordinary and compelling
> circumstances exist, even the most serious offenders
> may be eligible for mercy. See United States v Kibble,
> 2021 WL 1216543, at *6 (4th Cir. 2021)

The district court cited the defendant inital conduct to deny the
defendant compassionate release...However, "Section 3582 (C)(1) necessarily
envisions that 3553(a) factors may balance differently upon a motion for
compassionate release than  they did at the initial sentencing...An individual
requesting compassionate release will in all cases, by serving a sentence that
a district court once hold was sufficient but not greater than necessary...If a
district court's original 3553(a) analysis could always prove that a sentence
reduction would intolerably undermine the 3553(a) factors, then 18 U.S.C. §
3582(c)(1) would in effect be nullity. There is good reasons to believe that
in some cases, a sentence that was sufficient but not greater than necessary
before the coronavirus pandemic may no longer meet that criteria. A day in
prison under the current conditions is a qualitatively different type of
punishment than one day use to be. In these times, drastically different...These
condiction not contemplated by the original sentencing court, undoubetly increase
a prison sentence's punitive effect. See United States v Kibble, No. 20-7009,
2020 WL 1216543 at *3-4 (4th Cir. 2021).

Therefore, the court should find that serving an additional 15 years beyond
the over sixteen years that Mr. Bright has already been incarcerated would do
little to further the goals behind incarceration. The government may claim that
the need for deterrance mandates denying the instant motion. But fourteen years
ago the government offered Mr. Bright a 25 year plea deal through counsel.
Which is consistent with the sentencing data that the average sentence that is
ordinary issued (for murder is 254 months and the median 270 months). See
Interactive Data Analyzer U.S. Sent'g Comm'n, http://ida.USSC.Gov/analytics/
saw.dll?Dashboard (last visited Jan. 14, 2022). Therefore this is also extraordinary
and compelling reason why Mr. Bright's sentence of 460 months imprisonment should
be reduced.

Mr. Bright is now 54 years old. He has been in federal custody since he

was at least 37 years old, from the harm that he caused his community. Mr. Bright spent over 16 years incarcerated all of his mid-years and a large portion of his adulthood. He evidently recognize the danger he has done to society, his community and to his family and the record supports that he has sincerely rehabilitated himself.

<div align="center">

CONCLUSION

</div>

In <u>Concepcion v United States</u>, 210 L. Ed. 2d 1024 (2022), the Supreme Court held that the district court must consider the arguments in mitigation in determining whether to grant Section 404 relief...Here the district court failed to consider Mr. Bright's age, prison record, post-conviction rehabilitation, and unwarranted disparties among defendant's with similar records who have been found guilty of similar conduct.

Dated: 8-15-22

<div style="margin-left: 50%;">

Respectfully Submitted,

*Sidney Bright*
Appellant Pro Se

Sidney Bright

Reg. No. 58833-054

FCI-Otisville

P.O. Box 1000

Otisville, NY 10963

</div>

# Exhibit A

DEPARTMENT OF JUSTICE
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES
## REPORT OF INVESTIGATION

Page 1 of 2

ADDRESSED TO:
Special Agent in Charge
New York Field Division

MONITORED INVESTIGATION INFORMATION:
New York Field Division
FY-06
█████████

TITLE OF INVESTIGATION:
Steve YOUNG et. al.

CASE NUMBER: █████████

REPORT NUMBER: █████

TYPE OF REPORT: *(Check Applicable Boxes)*

| X | REPORT OF INVESTIGATION | | | COLLATERAL REPLY | |
|---|---|---|---|---|---|
| | REPORT OF INTELLIGENCE | | | | |

| SUBMITTED BY *(Name)* | SUBMITTED BY *(Title and Office)* | SUBMITTED BY *(Date)* |
|---|---|---|
| Peter Forcelli | Special Agent, New York I (Firearms) Field Office | 11/03/2005 |
| REVIEWED BY *(Name)* | REVIEWED BY *(Title and Office)* | REVIEWED BY *(Date)* |
| Thomas P. Kelly | Group Supervisor, New York I (Firearms) Field Office | 11/7/05 |
| APPROVED BY *(Name)* | APPROVED BY *(Title and Office)* | APPROVED BY *(Date)* |
| William G. McMahon | Special Agent in Charge, New York Field Division | |

## DESCRIPTION OF ACTIVITY:

Location of records related to firearms trafficked by Sidney BRIGHT and Steve YOUNG, recovered in vicinity of East 162nd Street and Morris Avenue.

## SYNOPSIS:

On 11/03/2005, Special Agent Forcelli located records of an arrest, which was made by NYPD Officers, which related to firearms trafficked by Sidney BRIGHT and Steve YOUNG. The records related to information received during a proffer on 11/02/2005.

## NARRATIVE:

On 11/03/2005, Special Agent Forcelli located records of an arrest, which was made by NYPD Officers, which related to firearms trafficked by Sidney BRIGHT and Steve YOUNG. The records related to information received during a proffer on 11/02/2005. In this proffer, Steve YOUNG stated that on several occasions he had traveled to the area of Fredericksburg, Virginia in order to deliver narcotics and accept firearms on behalf of Sidney BRIGHT.

During this interview, YOUNG stated that he was aware of a recovery of firearms, which he delivered for BRIGHT, by NYPD Officers in the area of East 162nd Street and Morris Avenue. YOUNG stated that the firearms were seized from John ROMERO, a male from whom he (YOUNG) had received drugs, prior to being supplied narcotics for sale by Sidney BRIGHT.

A check of various law enforcement databases revealed that numerous firearms were seized from Juan ROMERO, on 05/02/1996, at 296 East 162nd Street, Bronx, NY. This seizure was made pursuant to ROMERO's arrest, by Detective Peter Mayo, on that date (NYPD arrest # ██████████). Also recovered were narcotics, and

F 3120.2 (5-98)

3502 T

DEPARTMENT OF JUSTICE
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES
REPORT OF INVESTIGATION

| DRESSED TO: ec̶ ͗gent in Charge ℩w ͵Field Division | MONITORED INVESTIGATION INFORMATION: New York Field Division FY-06 ▇▇▇▇▇ |
|---|---|

| ᴛLE OF INVESTIGATION: ᴇve YOUNG et. al. | |
|---|---|

| SE NUMBER: ▇▇▇ | REPORT NUMBER: ▇▇ |
|---|---|

rcotics paraphernalia. Further checks revealed that the recovered firearms were traced by the ATF, with purchaser formation linked to the Hampton, Virginia area. This data verifies the information received in this investigation ᴏm Steve YOUNG.

· A criminal history check of Juan ROMERO, under SID ▇▇▇▇▇ revealed that ROMERO is a four time nvicted felon. ROMERO is currently in the custody of the NYS Department of Corrections, pursuant to a rglary conviction. (Washington Correctional Facility, in Comstock, NY, inmate ▇▇▇▇▇. ROMERO's earliest ease date is 05/19/2010.

Identifying and Location Information

As of 11/11/14

| DIN (Department Identification Number) | 95R8239 |
|---|---|
| Inmate Name | BRIGHT, ELTON |
| Sex | MALE |
| Date of Birth | 04/02/1973 |
| Race / Ethnicity | BLACK |
| Custody Status | RELEASED |
| Housing / Releasing Facility | BARE HILL |
| Date Received (Original) | 11/02/1995 |
| Date Received (Current) | 11/02/1995 |
| Admission Type | |
| County of Commitment | BRONX |
| Latest Release Date / Type (Released Inmates Only) | 11/09/01 PAROLE - COND REL TO PAROLE |

Crimes of Conviction

If all 4 crime fields contain data, there
may be additional crimes not shown here.
In this case, the crimes shown here are
those with the longest sentences.

As of 11/11/14

| Crime | Class |
|---|---|
| CRIM POSS WEAP 2ND | C |
| CRIM POSS WEAP 3RD SUB 4-8 VFO | D |
| RECKLESS ENDANGERMENT 1ST | D |
| CRIM MISCHIEF 2ND | D |

Sentence Terms and Release Dates

Under certain circumstances, an inmate may be released prior to serving his
or her minimum term and before the earliest release date shown for the
inmate.

As of 11/11/14

| | |
|---|---|
| Aggregate Minimum Sentence | 0003 Years, 00 Months, 00 Days |
| Aggregate Maximum Sentence | 0006 Years, 00 Months, 00 Days |
| Earliest Release Date | |
| Earliest Release Type | |
| Parole Hearing Date | 04/2002 |
| Parole Hearing Type | REAPPEARANCE |
| Parole Eligibility Date | 06/21/1998 |
| Conditional Release Date | 11/10/2001 |
| Maximum Expiration Date | 11/10/2002 |
| Maximum Expiration Date for Parole Supervision | |
| Post Release Supervision Maximum Expiration Date | |
| Parole Board Discharge Date | |



Skip to Content

# Department of Corrections and Community Supervision

## Inmate Information

Inmate Information Data Definitions are provided for most of the elements listed below. When a detailed definition is available for a specific element, you may click on the element's label to view it.

### Identifying and Location Information
### As of 11/17/14

| | |
|---|---|
| DIN (Department Identification Number) | 97R8411 |
| Inmate Name | BEATY, DUANE |
| Sex | MALE |
| Date of Birth | 10/24/1971 |
| Race / Ethnicity | BLACK |
| Custody Status | RELEASED |
| Housing / Releasing Facility | FULTON |
| Date Received (Original) | 12/05/1997 |
| Date Received (Current) | 12/05/1997 |
| Admission Type | |
| County of Commitment | BRONX |
| Latest Release Date / Type (Released Inmates Only) | 03/04/02 PAROLE DIV OF PAROLE |

Crimes of Conviction
If all 4 crime fields contain data, there may
be additional crimes not shown here. In
this case, the crimes shown here are those
with the longest sentences.
As of 11/17/14

| Crime | Class |
|---|---|
| CRIM SALE CONTR SUBSTANCE 3RD | B |
| CRIM POSS WEAP 3RD SUB 4-8 VFO | D |
| | |
| | |

## Sentence Terms and Release Dates
Under certain circumstances, an inmate may be released prior to serving his
or her minimum term and before the earliest release date shown for the
inmate.
### As of 11/17/14

| | |
|---|---|
| Aggregate Minimum Sentence | 0004 Years, 06 Months, 00 Days |
| Aggregate Maximum Sentence | 0009 Years, 00 Months, 00 Days |
| Earliest Release Date | |
| Earliest Release Type | |
| Parole Hearing Date | 01/2002 |
| Parole Hearing Type | APPROVED DATE |
| Parole Eligibility Date | 03/03/2002 |
| Conditional Release Date | 08/31/2003 |
| Maximum Expiration Date | 08/31/2006 |
| Maximum Expiration Date for Parole Supervision | |
| Post Release Supervision Maximum Expiration Date | |
| Parole Board Discharge Date | |



Skip to Content

# Department of Corrections and Community Supervision

## Inmate Information

Inmate Information Data Definitions are provided for most of the elements listed below. When a detailed definition is available for a specific element, you may click on the element's label to view it.

### Identifying and Location Information
#### As of 11/17/14

| | |
|---|---|
| DIN (Department Identification Number) | 98R0509 |
| Inmate Name | BRISCOE, DUVAL |
| Sex | MALE |
| Date of Birth | 09/29/1975 |
| Race / Ethnicity | BLACK |
| Custody Status | RELEASED |
| Housing / Releasing Facility | SING SING |
| Date Received (Original) | 01/27/1998 |
| Date Received (Current) | 01/27/1998 |
| Admission Type | |
| County of Commitment | BRONX |
| Latest Release Date / Type (Released Inmates Only) | 03/26/04 PAROLE - COND REL TO PAROLE |

Crimes of Conviction
If all 4 crime fields contain
data, there may be additional
crimes not shown here. In
this case, the crimes shown
here are those with the
longest sentences.
As of 11/17/14

| Crime | Class |
|---|---|
| CRIM POSS WEAP 2ND | C |
| | |
| | |
| | |

## Sentence Terms and Release Dates
Under certain circumstances, an inmate may be released prior to serving his or her minimum term and before the earliest release date shown for the inmate.

### As of 11/17/14

| | |
|---|---|
| Aggregate Minimum Sentence | 0005 Years, 00 Months, 00 Days |
| Aggregate Maximum Sentence | 0010 Years, 00 Months, 00 Days |
| Earliest Release Date | |
| Earliest Release Type | |
| Parole Hearing Date | 11/2005 |
| Parole Hearing Type | REAPPEARANCE |
| Parole Eligibility Date | 01/28/2001 |
| Conditional Release Date | 03/28/2004 |
| Maximum Expiration Date | 01/28/2006 |
| Maximum Expiration Date for Parole Supervision | |
| Post Release Supervision Maximum Expiration Date | |
| Parole Board Discharge Date | |

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

United States of America,

**CERTIFICATE OF SERVICE***

Docket Number: 22-1644

v.

Sidney Bright,

I, _____Sidney Bright_____, hereby certify under penalty of perjury that
(print name)
on ____ _8- 15 - 22_ ____, I served a copy of _Agent Forcelli Investigation_ Report
(date)
3502-T, RAP SHEET (Enforcer), Young Plea Allocution, Bright's PSR, and BOP Assessment
Tool including the Appellnt Brief(list all documents)

by (select all applicable)**

___ Personal Delivery          _*_ United States Mail          ___ Federal Express or other
                                                                    Overnight Courier

___ Commercial Carrier          ___ E-Mail (on consent)

on the following parties:

Kiersten A. Fletcher, AUSA, U.S. Attorney's Office S.D.N.Y.

| Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| One St. Andrew's Plaza, New York 10007 | | | | |

Court of Appeals
For The Second Circuit

| Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| Clerk, Second Circuit Court of Appeals | | | | |

SEP - 6 2022

| Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| 40 Foley Square, New York 10007 | | | | |

BY: _____

| Name | Address | City | State | Zip Code |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

_8- 15- 2 2_
Today's Date

_Sidney Bright_
Signature

Certificate of Service Form (Last Revised 12/2015)

**Federal Rules of Appellate Procedure Form 7.  Declaration of Inmate Filing**

United States District Court for the District of  <u>Southern District of New York</u>

| | | |
|---|---|---|
| United States of America | ) | |
| *Plaintiff,* | ) | |
| v. | ) | Case No. <u>22-1644</u> |
| | ) | |
| Sidney Bright | ) | |
| *Defendant.* | ) | |

I am an inmate confined in an institution. Today, <u>*8-15-22*</u> [*insert date*], I am depositing the <u>appeal</u> [*insert title of document; for example, "notice of appeal"*] in this case in the institution's internal mail system. First-class postage is being prepaid either by me or by the institution on my behalf.

I declare under penalty of perjury that the foregoing is true and correct (see 28 U.S.C. § 1746; 18 U.S.C. § 1621).

Sign your name here <u>*Sidney Bright*</u>

Signed on <u>*8-15-22*</u>          [insert date]

[***Note to inmate filers:*** *If your institution has a system designed for legal mail, you must use that system in order to receive the timing benefit of Fed. R. App. P. 4(c)(1) or Fed. R. App. P. 25(a)(2)(A)(iii).*]

Court of Appeals
For The Second Circuit
RECEIVED
SEP - 6 2022
BY:

Rev. 12.1.2018

Sidney Bryant # 58833-054
f.c.i Otisville
P.O. Box 1000
Otisville NY 10963

Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall U.S Courthouse
40 Foley Square
New York, NY 10007

U.S. POSTAGE PAID
FCM LG ENVE
OTISVILLE, NY
10963
AUG 07 22
$0.00
R2305K138471
1000
10007
-25










USM SDNY