# 22-1644

*To Be Argued By*:
ALEXANDRA S. MESSITER

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

### Docket No. 22-1644

◆◆◆

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

SIDNEY BRIGHT,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR THE UNITED STATES OF AMERICA

DAMIAN WILLIAMS,
*United States Attorney for the
Southern District of New York,
Attorney for the United States
of America.*
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2200

ALEXANDRA S. MESSITER,
DAVID ABRAMOWICZ,
*Assistant United States Attorneys,
Of Counsel.*

# TABLE OF CONTENTS

PAGE

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . .  2

    A.  The Offense Conduct, Indictment, and
        Conviction . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

    B.  The Sentencing, Direct Appeal, and Section
        2255 Petition . . . . . . . . . . . . . . . . . . . . . . . . . .  3

    C.  The Counseled Motion for a Sentence
        Reduction . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

    D.  The *Pro Se* Motion for a Sentence
        Reduction . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

    E.  The Motion for Reconsideration . . . . . . . . .  8

ARGUMENT:

POINT I—The District Court Did Not Abuse Its
Discretion in Denying Bright's Motion for a
Sentence Reduction . . . . . . . . . . . . . . . . . . . . . .  10

    A.  Applicable Law . . . . . . . . . . . . . . . . . . . . . .  10

        1.  Section 404 of the First Step Act . . . .  11

        2.  Section 3582(c)(1)(A) . . . . . . . . . . . . . .  12

    B.  Discussion . . . . . . . . . . . . . . . . . . . . . . . . . .  14

POINT II—The District Court Did Not Abuse Its
Discretion in Denying Bright's Motion for
Reconsideration . . . . . . . . . . . . . . . . . . . . . . . . .  19

ii

PAGE

A. Applicable Law . . . . . . . . . . . . . . . . . . . . . . 19

B. Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## TABLE OF AUTHORITIES

*Cases*:

*Bright v. United States*,
   No. 14 Civ. 968, 2018 WL 5847103
   (S.D.N.Y. Nov. 8, 2018). . . . . . . . . . . . . . . . . . . . . . 5

*Bright v. United States*,
   No. 18-3628, 2019 WL 6699707
   (2d Cir. May 22, 2019) . . . . . . . . . . . . . . . . . . . . . . 5

*Concepcion v. United States*,
   142 S. Ct. 2389 (2022). . . . . . . . . . . . . . . 12, 15, 17

*Dillon v. United States*,
   560 U.S. 817 (2010). . . . . . . . . . . . . . . . . . . . . . 8, 10

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995) . . . . . . . . . . . . . . . 19, 20

*United States v. Blumenberg*,
   506 F. App'x 53 (2d Cir. 2012) . . . . . . . . . . . . . . . 19

*United States v. Borden*,
   564 F.3d 100 (2d Cir. 2009) . . . . . . . 12, 14, 15, 16

*United States v. Bright*,
   528 F. App'x 88 (2d Cir. 2013) . . . . . . . . 2, 3, 5, 15

iii

PAGE

*United States v. Burrell,*
    665 F. App'x 91 (2d Cir. 2016) . . . . . . . . . . . . . . . 20

*United States v. Gibbs,*
    58 F.3d 36 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . 18

*United States v. Gunn,*
    366 F. App'x 215 (2d Cir. 2010) . . . . . . . . . . . . . 19

*United States v. Halvon,*
    26 F.4th 566 (2d Cir. 2022) . . . . . . . . . . . . *passim*

*United States v. Holloway,*
    956 F.3d 660 (2d Cir. 2020) . . . . . . . . . . . . . 11, 12

*United States v. Jones,*
    17 F.4th 371 (2d Cir. 2021) . . . . . . . . . .   12, 13, 15

*United States v. Keitt,*
    21 F.4th 67 (2d Cir. 2021) . . . . . . . . . . . . . . . . . 13

*United States v. McCoy,*
    995 F.3d 32 (2d Cir. 2021) . . . . . . . . . . . . . . . . . 19

*United States v. Mora,*
    22 F.3d 409 (2d Cir. 1994) . . . . . . . . . . . . . . . . . 18

*United States v. Roney,*
    833 F. App'x 850 (2d Cir. 2020) . . . . . . . . . . . . . 13

*United States v. Rosa,*
    957 F.3d 113 (2d Cir. 2020) . . . . . . . . . . . . . . . . 14

*United States v. Seshan,*
    850 F. App'x 800 (2d Cir. 2021) . . . . . . . . . . . . . 13

iv

PAGE

*Statutes, Rules & Other Authorities*:

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 3582(c) . . . . . . . . . . . . . . . . . . . . . . *passim*

21 U.S.C. § 841(b)(1) . . . . . . . . . . . . . . . . . . . . . 17, 18

Fair Sentencing Act of 2010,
    Pub. L. No. 111-220, 124 Stat. 2372 . . . . . . . . . . 11

First Step Act of 2018,
    Pub. L. No. 115-391, 132 Stat. 5194 . . . 11, 15, 18

# United States Court of Appeals

## FOR THE SECOND CIRCUIT
## Docket No. 22-1644

───────────

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

SIDNEY BRIGHT,

*Defendant-Appellant.*

───────────

## BRIEF FOR THE UNITED STATES OF AMERICA

───────────

### Preliminary Statement

Sidney Bright appeals from orders entered on February 23, 2022, and July 13, 2022, in the United States District Court for the Southern District of New York, by the Honorable Loretta A. Preska, United States District Judge, denying Bright's motion for a reduced sentence under Section 404 of the First Step Act of 2018 or 18 U.S.C. § 3582(c)(1)(A) and denying his motion for reconsideration, respectively.

Bright is serving his sentence.

2

**Statement of Facts**

## A. The Offense Conduct, Indictment, and Conviction

Between 1995 and 2004, Bright worked with and ultimately led a drug operation that sold crack cocaine, cocaine, and heroin to customers and drug dealers in the Bronx. (PSR ¶ 11).[1] At Bright's direction, enforcers who worked for Bright shot guns at rival drug dealers and at buildings where competitors sold drugs. *See United States v. Bright*, 528 F. App'x 88, 90 & n.1 (2d Cir. 2013). In 2002, Bright paid Tyrone Glynn to shoot and kill one rival, Heriberto Diaz, and supplied Glynn with a firearm that Glynn used to do so. (PSR ¶¶ 19–21).

On July 9, 2008, Superseding Indictment S2 06 Cr. 242 was filed, charging Bright in four counts. Count One charged Bright with conspiring to distribute and possess with intent to distribute at least 50 grams of crack cocaine, at least five kilograms of cocaine, and heroin, in violation of 21 U.S.C. § 846. Count Two charged Bright with possessing and using a firearm

---

[1]    "PSR" and "Presentence Report" refer to the Presentence Investigation Report prepared by the United States Probation Office ("Probation Office") in connection with Bright's sentencing; "Br." refers to Bright's brief on appeal; "Dkt." refers to an entry on the District Court's docket for this case; and "Add." refers to the addendum filed with this brief. Unless otherwise noted, case text quotations omit internal quotation marks, citations, and previous alterations.

3

during and in relation to the drug-trafficking crime charged in Count One, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. Count Three charged Bright with causing Diaz's death through the use of a firearm during and in relation to the drug-trafficking crime charged in Count One, in violation of 18 U.S.C. §§ 924(j) and 2. Count Four charged Bright with murdering Diaz while engaged in a drug crime punishable under 21 U.S.C. § 841(b)(1)(A), namely, the conspiracy charged in Count One, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2.

Bright proceeded to trial before the Honorable William H. Pauley III, United States District Judge, and a jury. His first trial ended in a mistrial related to a potential attorney conflict. *See Bright*, 528 F. App'x at 91. His second trial concluded on May 19, 2010, when the jury returned a verdict convicting Bright on Count One insofar as it charged a conspiracy to distribute at least 50 grams of crack cocaine, convicting Bright on Count Two, and acquitting Bright on Count One's cocaine and heroin objects and on Counts Three and Four. *See id.* at 90.

## B. The Sentencing, Direct Appeal, and Section 2255 Petition

Judge Pauley, who had presided over Bright's first and second trials, sentenced Bright on December 9, 2011. After noting that he had "reviewed the presentence investigation report and the lengthy and thoughtful submissions of counsel," Judge Pauley adopted the Presentence Report's factual findings as his own. (Dkt. 139 at 25).

4

The District Court calculated the recommended sentence under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") to be life imprisonment. It found that "[w]hile the jury acquitted [Bright] of the murder charge, it's clear to this Court that the government proved the murder charge by clear and convincing evidence." (Dkt. 139 at 30). Having determined that a preponderance of the evidence proved the murder, the District Court considered that acquitted conduct in calculating the Guidelines. (Dkt. 139 at 27-29).

With respect to the applicable mandatory minimum sentence, the District Court determined that the Fair Sentencing Act of 2010 did not apply retroactively to Bright. (Dkt. 139 at 25-26). Accordingly, and because the Government had filed a prior felony information, Bright faced a mandatory minimum sentence of 20 years' imprisonment on Count One. (Dkt. 139 at 26). The District Court made clear that even if the Fair Sentencing Act applied, "it would not matter in this case because Mr. Bright will not be getting a mandatory minimum sentence." (Dkt. 139 at 29).

After hearing from counsel and from Bright, the District Court sentenced Bright principally to 400 months' imprisonment on Count One, a mandatory consecutive term of 60 months' imprisonment on Count Two, and lifetime supervised release. In explaining the sentence, the District Court noted that the drug conspiracy underlying Bright's conviction on Count One "spanned many years" and that Bright, "the architect and leader of the organization," was "cold and calculating in growing his drug business,

5

disciplining his employees, protecting his turf and eliminating his competition." (Dkt. 139 at 29-30). Describing Bright's crimes as "not crimes of youth or immaturity or impulsion" but "sophisticated, long-running and cold blooded" offenses, the District Court stated that "a very lengthy incarceration is necessary so that Mr. Bright does not present a clear and present danger to the community if he is released." (Dkt. 139 at 30-31).

Bright appealed his conviction and sentence. This Court affirmed by summary order. *See Bright*, 528 F. App'x 88. Among the claims the Court rejected were Bright's arguments challenging the procedural and substantive reasonableness of his sentence. *See id.* at 93.

The District Court subsequently denied a petition to vacate, set aside, or correct Bright's sentence under 28 U.S.C. § 2255. *See Bright v. United States*, No. 14 Civ. 968, 2018 WL 5847103 (S.D.N.Y. Nov. 8, 2018). Bright appealed and moved for a certificate of appealability. This Court declined to issue a certificate of appealability and dismissed the appeal. *See Bright v. United States*, No. 18-3628, 2019 WL 6699707 (2d Cir. May 22, 2019).

## C.  The Counseled Motion for a Sentence Reduction

On November 13, 2020, Bright, through counsel, moved for a reduced sentence (i) under Section 404 of the First Step Act, which makes provisions in the Fair Sentencing Act of 2010 that lowered the mandatory minimum sentences applicable to crack cocaine

6

offenses retroactive, and (ii) in the alternative, for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Dkt. 163). The Government filed a letter opposing the motion on December 2, 2020 (Dkt. 164), and Bright filed a reply one week later (Dkt. 165). On February 26, 2021, Bright submitted supplemental medical information for the District Court's consideration in connection with his request for compassionate release. (Dkt. 167).

On February 23, 2022, Judge Preska issued a written memorandum and order denying Bright's motion (the "February 2022 Order"). (Add. 1-22). With respect to Section 404 of the First Step Act, the District Court determined that—as both the Government and the Probation Office agreed—Bright was eligible for a reduced sentence on the crack cocaine distribution crime charged in Count One. (Add. 9-10). With respect to the request for compassionate release, the District Court stated that it "assumes, without deciding, that Defendant's health conditions constitute 'extraordinary and compelling circumstances warranting release' under 18 U.S.C. [§] 3582(c)(1)(A)." (Add. 20).

The District Court nonetheless declined to reduce Bright's sentence, citing its consideration of the 18 U.S.C. § 3553(a) sentencing factors. (Add. 20-22). In particular, the District Court emphasized the need for just punishment given the "exceedingly serious" nature of Bright's offenses, which involved leading "a violent, long-running, and successful drug trafficking enterprise," "routinely instruct[ing] his underlings to engage in gun violence," and "order[ing] the murder

7

of " a rival drug dealer. (Add. 20-21). The District
Court explained:

> While Defendant's counsel do an admira-
> ble job of explaining that the [First Step
> Act] reflects Congress' change in attitude
> toward drug crimes, there is no change in
> attitude regarding guns or murder. Mur-
> der is murder—the taking of a human life
> —and this Defendant committed it to pro-
> tect his commercial drug trafficking in-
> terests. Defendant's crime was most seri-
> ous and deserves a most serious punish-
> ment. Judge Pauley imposed just that in
> meting out a sentence of thirty-eight
> years and four months (instead of the
> Guidelines Sentence of life).

(Add. 21). In weighing the Section 3553(a) factors, the
District Court also emphasized the need to protect the
public. (Add. 21-22). Judge Preska explained:

> While Defendant's counsel has done an
> admirable job of describing Defendant's
> employment while incarcerated and his
> many courses and certificates, the fact re-
> mains that this 52-year-old terrorized his
> fragile community with drugs and guns
> for a decade, ordering shots to be fired on
> public streets, and ordering the murder of
> a drug rival for his crass commercial
> goals. The Section 3553(a) factors counsel
> against a twenty-some year reduction in
> sentence and in favor of not permitting

> this Defendant to walk free in middle age.

(Add. 22 (quotation marks and brackets omitted)).

### D. The *Pro Se* Motion for a Sentence Reduction

Before filing the counseled motion for a reduced sentence, Bright had filed a separate, *pro se* motion seeking a reduced sentence on separate grounds. In papers filed in August and October 2020, Bright requested a sentence reduction under 18 U.S.C. § 3582(c)(2) based on an amendment that lowered the Guidelines applicable to certain drug offenses. (Dkt. 157, 159).

The District Court issued an order denying Bright's *pro se* motion on March 10, 2022 (the "March 2022 Order"). (Dkt. 174). The March 2022 Order explained that "[e]ven if the Court were to conclude that Mr. Bright were eligible for a sentence reduction" based on changes to the Guidelines, "it must also conclude that a reduction is appropriate considering the Section 3553(a) factors." (Dkt. 174 at 1 (citing 18 U.S.C. § 3582(c)(2); *Dillon v. United States*, 560 U.S. 817, 827 (2010))). The District Court then denied any sentence reduction based on the Section 3553(a) factors "for the reasons stated in the" February 2022 Order. (Dkt. 174 at 1; *see also id.* at 2 (quoting February 2022 Order's Section 3553(a) analysis)).

### E. The Motion for Reconsideration

In a letter docketed on March 18, 2022, Bright moved *pro se* for reconsideration of the February 2022 Order. (Dkt. 175). Bright contested three aspects of

9

that order: (i) its statement that Bright "did not take responsibility even for his narcotics distribution" at sentencing (Add. 6), (ii) its statement that Bright "provided guns" to enforcers who worked for his drug organization (Add. 3, 20), and (iii) its statement that Bright "retrieved the gun" used to kill Diaz "and gave it to Glynn" (Add. 5). Citing, among other things, trial testimony and his trial attorney's opening statement, Bright argued that the challenged statements were "errors of fact" warranting reconsideration of the District Court's Section 3553(a) analysis. (Dkt. 175 at 2-6).

The District Court denied the motion for reconsideration on July 13, 2022 (the "July 2022 Order"). (Add. 23-26). Judge Preska explained that far from identifying any "findings of fact contrary to those recited" by the District Court, Bright's motion "cherry picks inconclusive material from the transcripts of his first and second trials," which is insufficient to meet "the high standard required in a motion for reconsideration." (Add. 25).[2]

_____

2    The July 2022 Order incorrectly characterized Bright's motion as seeking "reconsideration of the Court's March 10, 2022 order (dkt. no. 174)," *i.e.*, the March 2022 Order, rather than the February 2022 Order. (Add. 23). The error may have resulted from the reconsideration motion's statement that Bright "was not aware of the Court's [February 2022] ORDER until March 10, 2022" (Dkt. 175 at 1), which happened to be the date of the March 2022 Order. In any event, although Bright's counseled and *pro se* motions sought

10

# A R G U M E N T

## POINT I

### The District Court Did Not Abuse Its Discretion in Denying Bright's Motion for a Sentence Reduction

#### A. Applicable Law

"'A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). As a general matter, a federal district court is therefore powerless to "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Relevant here, however, exceptions exist "to the extent . . . expressly permitted by statute," *id.* § 3582(c)(1)(B), and under the so-called compassionate-release provision of Section 3582, *see id.* § 3582(c)(1)(A).

──────────

reduced sentences on different grounds, the February 2022 Order and the March 2022 Order denied those motions based on the same analysis of the Section 3553(a) factors—indeed, the March 2022 Order stated that the result was the same "for the reasons stated in the" February 2022 Order, which it then quoted extensively—so the error did not affect the reconsideration analysis.

11

### 1.  Section 404 of the First Step Act

Section 404 of the First Step Act permits—but does not require—a district court to modify a defendant's sentence in limited circumstances. Under the statute, "[a] court that imposed a sentence for a 'covered offense' may, on motion of the defendant, . . . impose a sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018). A "covered offense" means a violation of a federal criminal statute that was modified by Section 2 or 3 of the Fair Sentencing Act. *Id.* § 404(a). As relevant here, Section 2 of the Fair Sentencing Act increased the quantity of crack cocaine necessary to trigger the mandatory minimum sentences set forth in 21 U.S.C. § 841(b)(1)(A) from 50 grams to 280 grams. *See* Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372 (2010). A defendant who meets the criteria of Section 404 of the First Step Act may move for a reduced sentence under 18 U.S.C. § 3582(c)(1)(B). *See United States v. Holloway*, 956 F.3d 660, 665-66 (2d Cir. 2020).

Section 404(c) of the First Step Act provides that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." Pub. L. No. 115-391, § 404(c), 132 Stat. at 5222.

Although "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence," it "does not require a district court to accept a movant's argument that evidence of rehabilitation or other changes in law counsel in favor of a sentence reduction."

*Concepcion v. United States*, 142 S. Ct. 2389, 2404-05 (2022). "Nor does the First Step Act require a district court to make a point-by-point rebuttal of the parties' arguments. All that is required is for a district court to demonstrate that it has considered the arguments before it." *Id.* at 2405.

"The broad discretion that the First Step Act affords to district courts also counsels in favor of deferential appellate review." *Concepcion*, 142 S. Ct. at 2404. A district court's denial of a sentence-reduction motion under the First Step Act is reviewed for abuse of discretion, *see Holloway*, 956 F.3d at 664, meaning that the district court will be reversed only if it "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence or rendered a decision that cannot be located within the range of permissible decisions," *United States v. Borden*, 564 F.3d 100, 104 (2d Cir. 2009).

## 2. Section 3582(c)(1)(A)

Under the compassionate-release provision, a court "may reduce [a] term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Thus, extraordinary and compelling reasons are necessary—but not sufficient—for a defendant to obtain relief under § 3582(c)(1)(A)." *United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021). Even where extraordinary and compelling reasons exist, "the court must also consider 'the factors set forth in section 3553(a) to the extent that

13

they are applicable' before it can reduce the defendant's sentence." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Section 3553(a) factors include "the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities." *United States v. Roney*, 833 F. App'x 850, 852 (2d Cir. 2020) (citing 18 U.S.C. § 3553(a)). A district court may deny a motion for compassionate release based solely on the Section 3553(a) factors, without deciding "whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction." *United States v. Keitt*, 21 F.4th 67, 69 (2d Cir. 2021).

Like the denial of a sentence-reduction motion brought under the First Step Act, the denial of a motion for compassionate release is reviewed for abuse of discretion. *See Keitt*, 21 F.4th at 71. "A district court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or renders a decision that cannot be located within the range of permissible decisions." *United States v. Halvon*, 26 F.4th 566, 569 (2d Cir. 2022). A district court's denial of compassionate release based on the Section 3553(a) factors is entitled to "the same deference" as "a district court's imposition of sentence based on its determination of the § 3553(a) factors." *United States v. Seshan*, 850 F. App'x 800, 801

14

(2d Cir. 2021). "Mere disagreement with how the dis-
trict court balanced the § 3553(a) factors . . . is not a
sufficient ground for finding an abuse of discretion,"
*Halvon*, 26 F.4th at 569, and this Court "presumes
that the sentencing judge has considered all relevant
§ 3553(a) factors and arguments unless the record sug-
gests otherwise," *United States v. Rosa*, 957 F.3d 113,
118 (2d Cir. 2020); *see Halvon*, 26 F.4th at 570 (apply-
ing *Rosa*'s presumption on appeal from denial of com-
passionate-release motion).

## B. Discussion

The District Court determined that Bright was eli-
gible for a reduced sentence under the First Step Act
(Add. 9-10) and assumed, without deciding, that
Bright had established extraordinary and compelling
circumstances and therefore was eligible for a reduced
sentence under the compassionate-release provision
(Add. 20). Judge Preska nevertheless denied Bright's
counseled motion for a reduced sentence based on the
seriousness of Bright's violent, deadly conduct, the
need to provide just punishment for crimes involving
guns and murder, and the need to protect the public.
(Add. 20-22).

That ruling was well within the District Court's
broad discretion.

First, the District Court's approach was not based
on an "erroneous view of the law," *Halvon*, 26 F.4th at
569; *Borden*, 564 F.3d at 104, because the law is clear
that district courts may deny reduced-sentence mo-
tions brought by defendants who satisfy threshold eli-
gibility requirements. The First Step Act expressly

15

states that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." Pub. L. No. 115-391, § 404(c), 132 Stat. at 5222; *see also Concepcion*, 142 S. Ct. at 2404 (discussing "the broad discretion that the First Step Act affords to district courts"). And Section 3582 requires district courts to "consider[] the factors set forth in section 3553(a) to the extent that they are applicable" before reducing the sentence of a defendant who has established "extraordinary and compelling reasons" for early release. 18 U.S.C. § 3582(c)(1)(A)(i); *see also Jones*, 17 F.4th at 374.

Second, the District Court did not base its ruling "on a clearly erroneous assessment of the evidence." *Halvon*, 26 F.4th at 569; *Borden*, 564 F.3d at 104. Bright quibbles with details in the District Court's discussion of his case. (Br. 12-14, 23-25). But the District Court's ruling rested on basic facts about Bright's criminal conduct: that Bright led a "successful drug trafficking enterprise" in the Bronx "for almost ten years"; that Bright "routinely instructed his underlings to engage in gun violence" to protect his enterprise's turf and drive out competitors; and that Bright "ordered the murder of Heriberto Diaz, another rival drug dealer." (Add. 20-21). Those facts match the core findings set forth in the Presentence Report (PSR ¶¶ 11-22, 31, 33), adopted and supplemented by Judge Pauley at sentencing (Dkt. 139 at 26-30), and left undisturbed when this Court affirmed Bright's conviction and the procedural and substantive reasonableness of his sentence on direct appeal, *see Bright*, 528 F. App'x 88.

16

Third, the District Court's conclusion that those facts counseled against a sentence reduction can easily be "located within the range of permissible decisions," *Halvon*, 26 F.4th at 569; *Borden*, 564 F.3d at 104, because requiring a defendant who dealt drugs for nearly a decade, led a violent drug organization, and personally ordered a murder to serve his aggregate term of 460 months' imprisonment is entirely reasonable.

Bright contends that the District Court weighed the nature and circumstances of his offense and the need to protect the public too heavily while failing to give sufficient weight to other considerations, such as his age, his good conduct in prison, the need to avoid unwarranted sentence disparities, and changes in the Guidelines and mandatory minimum sentences applicable to crack cocaine offenses. (Br. 8-11, 14-21, 30-32). Bright's argument amounts to "[m]ere disagreement with how the district court balanced the § 3553(a) factors," which "is not a sufficient ground for finding an abuse of discretion." *Halvon*, 26 F.4th at 569. The District Court considered Bright's evidence of rehabilitation, noting that defense counsel had "done an admirable job of describing Defendant's employment while incarcerated and his many courses and certificates." (Add. 22). It also considered Bright's arguments about recent legal developments, noting that Bright's attorneys "do an admirable job of explaining that the [First Step Act] reflects Congress' change in attitude toward drug crimes." (Add. 21).[3] No more was required. The

_____

[3] The February 2022 Order cited cases stating that the First Step Act does not permit plenary resentencing or reevaluation of the Section 3553(a) factors.

17

District Court was entitled to deny Bright's motion without expressly addressing every Section 3553(a) factor or defense argument, *see Concepcion*, 142 S. Ct. at 2405 (noting that First Step Act does not "require a district court to make a point-by-point rebuttal of the parties' arguments"); *Halvon*, 26 F.4th at 570 ("A district court is presumed to have considered all relevant § 3553(a) factors and arguments unless the record suggests otherwise."), and it was entitled to reject Bright's arguments and rest its ruling on "sentencing considerations that had not changed since his original sentence," *id.* at 571; *see also Concepcion*, 142 S. Ct. at 2404-05 ("[T]he First Step Act does not require a district court to accept a movant's argument that evidence of rehabilitation or other changes in law counsel in favor of a sentence reduction . . . .").

Finally, Bright claims that under the First Step Act his term of supervised release "must be reduced from life to four years" because his conviction for an offense involving at least 50 grams of crack cocaine would now be punishable under 21 U.S.C. § 841(b)(1)(B), not 21

––––––––––

(Add. 13-14). Those cases are no longer good law under *Concepcion*, which held that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence." *Concepcion*, 142 S. Ct. at 2404. But the District Court expressly considered Bright's arguments about "intervening changes of law or fact" and explained why they were unpersuasive (Add. 21-22), so there is no need to vacate and remand for reconsideration in light of *Concepcion*.

18

U.S.C. § 841(b)(1)(A), and the prior felony that subjected him to increased penalties at sentencing would no longer trigger those consequences. (Br. 8; *see also* Br. 10-11). Bright's argument misconstrues the law. Section 841(b)(1)(B) sets a *minimum* term of supervised release of four years. *See* 21 U.S.C. § 841(b)(1)(B) (requiring courts to "include a term of supervised release of at least 4 years"). The maximum term of supervised release under the statute is life. *See United States v. Mora*, 22 F.3d 409, 412 (2d Cir. 1994); *see also United States v. Gibbs*, 58 F.3d 36, 37-38 (2d Cir. 1995) (explaining "[t]he rule in this circuit" that where a statute specifies only a minimum term of supervised release, "no maximum term of supervised release is imposed by such a provision, and therefore . . . the statutory maximum term of supervision release is a life term"). Nothing in the First Step Act required the District Court to reduce Bright's term of supervision to the minimum. *See* Pub. L. No. 115-391, § 404(c), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").[4]

———————

[4]     Bright also argues that because his prior felony would not trigger higher statutory penalties under the current text of the statute, "under current law Mr. Bright's mandatory minimum sentence on Count One would only be 5 years instead of 20 and his maximum sentence would be 40 years instead of life imprisonment." (Br. 11). Assuming *arguendo* he is correct, those changes could not have affected the District Court's ruling because Bright's 400-month sentence on

19

## POINT II

### The District Court Did Not Abuse Its Discretion in Denying Bright's Motion for Reconsideration

#### A. Applicable Law

The Federal Rules of Criminal Procedure do not provide for motions for reconsideration, but Rule 49.1(d) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York permits such motions, requiring that they set forth "the matters or controlling decisions which counsel believes the [District] Court has overlooked." The standard for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also United States v. Blumenberg*, 506 F. App'x 53, 54 (2d Cir. 2012) (applying *Shrader* standard in criminal case); *United States v. Gunn*, 366 F. App'x 215, 220 (2d Cir. 2010) (same). A motion for reconsideration "is inappropriate for the presentation of new facts or contentions, or for an attempt to reargue old ones." *United States v. McCoy*, 995 F.3d 32, 51 (2d Cir. 2021).

A district court's denial of reconsideration "is reviewable only for abuse of discretion." *Id.* at 52; *see also*

---

Count One is well above five years and well below 40 years.

20

*United States v. Burrell*, 665 F. App'x 91, 94 (2d Cir. 2016) (reviewing denial of reconsideration of Section 3582(c)(2) motion for abuse of discretion).

## B. Discussion

Bright does not come close to clearing the high bar needed to show that District Court abused its discretion by denying his motion for reconsideration. Nothing in Bright's reconsideration motion would have "alter[ed] the conclusion reached by the court." *Shrader*, 70 F.3d at 257. The District Court made that clear by considering and rejecting Bright's claims challenging its factual findings. As the District Court observed, Bright's reconsideration motion merely "cherry pick[ed] inconclusive material" from trial testimony, from a co-defendant's proffer statements and plea allocution, and from his own attorney's opening statement. (Add. 25). Those materials were far from the type of "controlling decisions or data" that might merit reconsideration. *Shrader*, 70 F.3d at 257. They certainly did not undermine the challenged ruling, which had relied on straightforward factual findings made by Judge Pauley, the presiding judge during both of Bright's trials, in connection with a sentence that this Court upheld on direct appeal.

21

## CONCLUSION

**The orders of the District Court should be affirmed.**

Dated:    New York, New York
           December 6, 2022

                    Respectfully submitted,

                    DAMIAN WILLIAMS,
                    *United States Attorney for the*
                    *Southern District of New York,*
                    *Attorney for the United States*
                        *of America.*

ALEXANDRA S. MESSITER,
DAVID ABRAMOWICZ,
    *Assistant United States Attorneys,*
        *Of Counsel.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 4,640 words in this brief.

DAMIAN WILLIAMS,
*United States Attorney for the*
*Southern District of New York*

By: DAVID ABRAMOWICZ,
*Assistant United States Attorney*

**ADDENDUM**

# TABLE OF CONTENTS

PAGE

Memorandum & Order of the Hon. Loretta
A. Preska, February 23, 2022 . . . . . . . . . . . . . . . Add. 1

Order of the Hon. Loretta A. Preska,
July 13, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . Add. 23

Add. 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                    -against-

SIDNEY BRIGHT,

                              Defendant.

---

06 CR 242 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court are Defendant Sidney Bright's motions for a reduction in sentence pursuant to Section 404 of the First Step Act of 2018 and for compassionate release pursuant to 18 U.S.C. Section 3582(c)(1)(A).  (Dkt. no. 163).  For the reasons set out below, the motions are denied.

I.   Background

     a. Offense Conduct and Trial

Defendant was a violent and successful drug dealer for almost ten years in the Bronx, where he operated a large drug business that sold crack, powder cocaine, and heroin in the vicinity of Courtlandt Avenue. Defendant had enforcers who worked for him and who, at Defendant's direction, shot guns at buildings where Defendant's competitors sold drugs, and at rival drug dealers. In 2002, Defendant paid a neighborhood crack addict, Tyrone Glynn, to shoot and kill one such rival, Heriberto Diaz.

1

Add. 2

On July 9, 2008, Defendant was charged in a superseding indictment in four counts: (1) from 1995 to 2004, Defendant conspired to distribute and possess with intent to distribute 50 grams and more of crack cocaine, five kilograms and more of cocaine, and heroin, in violation of Title 21, United States Code, Section 846, (2) between 1995 and 2004, Defendant possessed and used a firearm during and in relation to a drug trafficking crime, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2, (3) Defendant caused the 2002 death of Diaz during the commission of Count Two in violation of Title 18, United States Code, Sections 924(j) and 2, and (4) Defendant intentionally killed Diaz while engaged in a narcotics conspiracy, in violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.

Defendant proceeded to trial in May 2010. At trial, the Government's proof demonstrated that from 1995 to 2004, Defendant controlled a narcotics distribution enterprise, initially centered around his home on Courtland Avenue, and eventually expanding to include his supervision of other drug dealers, including Steven Young. Defendant was the boss, see Trial Transcript ("Tr.") at 84, and he had pitchers, lookouts, and managers working for him. Id. The pitchers, including cooperating witness Young, sold drugs to customers and sold

2

Add. 3

crack cocaine 24 hours a day, 7 days a week. Tr. 84, 88. Over
time, Defendant began supplying other drug dealers, including
Young and Lee Davis, and sold crack, powder cocaine and heroin
in Virginia on numerous occasions. Tr. 137-144.

Defendant routinely used guns to further and protect his
drug business. From 1995 to 2002, if a competitor was selling
drugs in a spot Defendant wanted to control, he asked enforcers
to shoot at that location in order to drive the competitor away.
Tr. 62-63, 90-91. He provided guns to the enforcers and they
shot at the buildings Defendant identified. As Defendant had
hoped, competitors stopped selling drugs in front of those
buildings. Tr. 135. Steven Young shot at four different
buildings or stores at Defendant's request, Tr. 91-93, and
Defendant had other enforcers, including Duane Beaty, Clifton
Prince, and D[e]val Prisco, shoot at buildings as well. Tr. 133.

In addition to shooting up particular locations, Defendant
asked his enforcers to shoot certain rival drug dealers. In 1995
or 1996, Defendant did not want a competitor known as "Satan"
selling drugs in his (Defendant's) neighborhood, so he asked
Young to shoot at him. Tr. 62. Defendant then accompanied Young
and another enforcer, Clifton Prince, as Melvin Brown drove them
down the block to find Satan. Tr. 147. Both Young and Brown
described the incident at trial. Defendant, Young, Prince,
Brown, and another man were in Brown's car and Defendant said to

3

Add. 4

"go get" Satan. Tr. 666. Young, Prince, and Defendant then got
out of the car and, while Defendant and Brown stayed by the car,
Young and Prince went to Courtlandt Avenue where, as Young
testified, they shot at Satan. Brown heard the gunshots, and
when Young and Prince returned, the whole car smelled like
gunpowder. Defendant then decided that they would drive to his
child's mother's house to drop off the gun used in the shooting
and then go to a nearby theater so that they had an alibi. Tr.
147-48, 669.

   The most significant example of Defendant's use of guns and
violence to further his drug business was the murder of
Heriberto Diaz. Diaz, a/k/a "Chino," was a drug dealer in
Defendant's neighborhood, and he was a competitor to Defendant.
Tr. 163-65. In approximately 2001, Defendant told Young that
Diaz was selling drugs in Defendant's neighborhood and asked
Young to kill him. Tr. 164-65. Defendant offered Young
approximately $3500, which Young believed was too little, and
after Young declined, Defendant drove away. Tr. 165. Young went
to find Defendant, and as Young was walking toward the Jackson
Projects, he saw someone shooting into Defendant's car.
Defendant's car made a u-turn and drove the wrong way up
Courtlandt Avenue, tr. 165-66, and Young later found out from
Defendant that Diaz had shot Defendant twice, and Defendant had
been hospitalized for a month. Tr. 166-67, 1242-43.

4

Add. 5

Diaz was charged with the shooting, and Defendant testified

against him. In his testimony, Defendant claimed that he had

asked Diaz not to sell drugs by his barbershop and that Diaz got

mad. Tr. 1239. Defendant then described how Diaz had shot him on

October 18, 1999. Tr. 1239. Diaz was acquitted following trial.

Following Diaz's acquittal, in 2002, Defendant again asked

Young to shoot Diaz, before ultimately offering to pay Tyrone

Glynn $3,500 to do it. The evidence at trial, which included

testimony from Young, Glynn and Melvin Brown, established that

Defendant asked Young for a gun, retrieved the gun from the

apartment of Brown where Young had been staying, and gave it to

Glynn. Glynn and Young both testified that Glynn had the gun and

shot Diaz, killing him. Tr. 168-181, 923-935.

On May 19, 2010, the jury returned its verdict, finding

Defendant guilty on Count One, and finding that the narcotics

conspiracy involved more than 50 grams of crack cocaine, and

guilty on Count Two, the firearm count. The jury acquitted the

Defendant on Counts Three and Four related to the murder of

Diaz.

**b. Sentencing**

On December 9, 2011, this Court conducted a sentencing

hearing. Defendant spoke at length at his sentencing, denying

his role in the Diaz murder and accusing Young and other

cooperating witnesses of setting him up. See December 9, 2011

5

Add. 6

Sentencing Transcript ("Sent. Tr.") at 12-22. Defendant did not take responsibility even for his narcotics distribution, the evidence of which was overwhelming, and expressed no remorse for his criminal conduct.

At sentencing, the Government argued the Fair Sentencing Act applied to this case and that the mandatory minimum on Count One was 10 years instead of 20 years. This Court disagreed, finding that Count One carried a mandatory minimum of 20 years' imprisonment because the Fair Sentencing Act did not apply retroactively to Defendant. Sent. Tr. 25-26 ("The new thresholds are not retroactive and accordingly because the government filed a prior felony information Mr. Defendant is subject to a mandatory minimum term of 20 years.")

The Court then proceeded to calculate the applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") based on Counts One and Two, finding Defendant's organization distributed more than 2.8 kilograms of crack cocaine, placing Defendant at an offense level 36. Sent Tr. 26. The Court added four levels pursuant to U.S.S.G. § 3B1.1 based on its finding that "Mr. Defendant was unquestionably the leader of a violent and sophisticated drug organization that involved five or more participants." Id. The Court explained that Defendant's organization "sold drugs around the clock seven days a week" and that "Defendant led a group of managers who

6

Add. 7

resupplied and oversaw different portions of the drug
organization and pitchers who sold drugs on the streets and
lookouts who shielded the workers from police" as well as
"enforcers to use violence to scare off rivals." Id. at 26-27.
At a total offense level of 40, and Defendant's undisputed
criminal history category III, the applicable Guidelines range
on Counts One and Two was 360 months to life. Id.

The Court held that, although the jury had acquitted
Defendant of Counts Three and Four related to the Diaz murder,
the Government had proven the murder by a preponderance of the
evidence and therefore the Court could consider the acquitted
conduct in determining the applicable Guidelines range.
Specifically, because the Government presented "overwhelming
evidence" that Defendant ordered the Diaz murder, the applicable
Guidelines range increased to a term of life imprisonment. Sent
Tr. 28. The Court explained that, in "determining whether a
downward departure from a guideline range calculated using
acquitted conduct should occur," the Court was required to
assess, pursuant to United States v. Cordoba-Murgas, 233 F.3d
704, 709 (2d Cir. 2002), "whether the range is an enormous
upward departure for uncharged conduct not proved at trial found
only by a preponderance of the evidence and where the Court has
substantial doubts about the accuracy of the findings." Sent.
Tr. 27. Because, in the Court's view, the murder was "proven by

7

Add. 8

clear and convincing evidence," there was no "substantial doubt" in the Court's mind as to Defendant's role in the Diaz murder, supporting the increase in the Guidelines range to life.

With respect to the applicable mandatory minimum, the Court explained that while it had ruled that the Fair Sentencing Act did not apply retroactively or modify the mandatory minimum sentence, "even if it did it would not matter in this case because Mr. Bright [would] not be getting a mandatory minimum sentence." Sent. Tr. 29. Based on the Court's finding that "Mr. Bright was the architect and leader of the [narcotics] organization" and that the "testimony at trial demonstrated that Mr. Bright was cold and calculating in growing his drug business, disciplining his employees, protecting his turf and eliminating his competition," the Court sentenced Defendant well above the then-applicable 20 year mandatory minimum sentence to a term of 400 months' imprisonment on Count One, to be followed by 60 months' imprisonment on Count Two. Sent. Tr. 30.

        **c. The Instant Motions**

Defendant requested compassionate release from the Warden of FCI Otisville, and that request was denied on October 20, 2020. (Ex. N to dkt no. 163, Letter from Acting Warden LeMaster). More than thirty days have elapsed since that denial.

8

Add. 9

On November 13, 2020, Defendant, through counsel, moved for resentencing pursuant to the First Step Act and, in the alternative, for compassionate release. (Dkt. no. 163).

In his motion for compassionate release, Defendant notes that he suffers from various underlying conditions, including obesity, hypertension, sickle cell trait, and anemia. (Dkt. no. 163 at 10). In supplemental papers, Defendant informs that a prior bacterial infection he suffered had resulted in kidney damage, that the infection was "Acute Kidney Injury (AKI) 2nd to sepsis," (dkt. no. 167 at 1), and that the infection recurred in March of 2021, (dkt. no. 168 at 1).

In discussing the Section 3553(a) factors, Defendant argues that his current sentence of thirty-eight years and four months is greater than what is necessary to achieve the statutory goals. (Dkt. no. 163 at 70).

With respect to Defendant's First Step Act motion, the Probation Department concluded in the Supplemental PSR dated January 23, 2020, and the Government agrees, that Defendant is eligible for resentencing on Count One because that count qualifies as a "covered offense" within the meaning of the FSA in light of United States v. Johnson's 962 F.3d 181 (2d Cir. 2020). Because the jury found Defendant responsible for 50 grams of crack, he is now subject to the statutory minimums set out in 21 U.S.C. Section 841(b)(1)(B)(iii). Because the

9

Add. 10

Government filed a prior felony information, the applicable

mandatory minimum pursuant to 21 U.S.C. Section 851 is ten

years.  See Supplemental PSR.[1]  Specifically, he argues that 1)

reducing his sentence would be consistent with Congressional

intent reflecting  a "shift in Congress' understanding of the

'seriousness' of drug offenses and the 'just punishment' for

offenses of which Mr. Defendant was convicted;" 2) specific and

general deterrence have been achieved through his having served

fifteen years and now being 52; 3) Defendant has rehabilitated

himself through, inter alia, earning his GED, being steadily

employed in a variety of departments, including UNICOR,

participating in and becoming a facilitator in a Victim Impact

Workshop, earning some seventy-five certificates in continuing

educational programs, and participating in various vocational

courses.  (Dkt. no. 163 at 7-9).  Defendant also argues that he

has a release plan providing that he live with his mother in the

Bronx and will apply for employment assistance and job

placement.  (Id. at 9-10).

---

[1] Defendant argues that the applicable mandatory minimum is five
years, because he does not have a prior felony pursuant to
Section 401 of the First Step Act. Because those changes apply
only to defendants who have not been sentenced, Defendant does
not benefit from this change.

10

Add. 11

II.   **Applicable Law**

    a. **The First Step Act**

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." United States v. Dillon, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). Title 18, United States Code Section 3582(c)(1)(B) provides one such circumstance: "[A] court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." (Emphasis added). Section 404(b) of the First Step Act provides, in relevant part, that a court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." This provision satisfies the express permission required under 18 U.S.C. § 3582(c)(1)(B) to modify an already imposed term of imprisonment by making retroactive the portions of the Fair Sentencing Act that lowered statutory penalties for certain offenses involving cocaine base. See, e.g., United States v. Wirsing, 2019 WL 6139017, at *7 (4th Cir. Nov. 20, 2019) ("We hold that § 3582(c)(1)(B) is the appropriate vehicle for a First Step Act motion."); United States v. Williams, No. 00 CR. 1008 (NRB), 2019 WL 5791747, at *5 (S.D.N.Y. Oct. 17, 2019) (construing a First Step Act motion

11

Add. 12

as brought pursuant to 18 U.S.C. § 3582(c)(1)(B)); United States
v. Davis, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019) (same);
United States v. Potts, 2019 WL 1059837, at *2-3 (S. D. Fla.
Mar. 6, 2019) ("§ 3582(c) provides the procedural vehicle
whereby this Court may modify Defendant's sentence."); United
States v. Copple, 2019 WL 486440, at *2 (S.D. Ill. Feb. 7, 2019)
("The Court believes the better vehicle to impose a reduced term
of imprisonment [under Section 404 of the First Step Act] is §
3582(c)(1)(B).").

The Fair Sentencing Act was enacted on August 3, 2010 and
did not apply retroactively. See Dorsey v. United States, 567
U.S. 260 (2012) (holding that the Act applied to any defendant
sentenced on or after August 3, 2010, regardless of when the
offense occurred). The First Step Act applies to "covered
offense[s]," which Section 404(a) defines as "a violation of a
Federal criminal statute, the statutory penalties for which were
modified by section 2 or 3 of the Fair Sentencing Act of 2010
(Public Law 111-220; 124 Stat. 2372), that was committed before
August 3, 2010," and provides that the court may "impose a
reduced sentence as if sections 2 and 3 of the Fair Sentencing
Act of 2010 . . . were in effect at the time the covered offense
was committed."

Prior to the Fair Sentencing Act, under 21 U.S.C.
§ 841(b)(1)(A), an offense involving 50 grams or more of cocaine

12

Add. 13

base required a mandatory minimum term of imprisonment of 10 years and allowed a maximum term of life imprisonment. The mandatory sentence was doubled to 20 years if the defendant had a prior conviction for a felony drug offense, and to life imprisonment if the defendant had two such prior convictions. Section 2 of the Fair Sentencing Act changed the threshold quantity to 280 grams for application of these sentencing provisions.

In United States v. Johnson, 961 F.3d 181, 187 (2d Cir. 2020), the Second Circuit held that the Fair Sentencing Act "modified the statutory penalties for 21 U.S.C. § 841(b)(1)(A)(iii)" and that the defendant in that case was therefore eligible because he was sentenced for a violation of that statute. Id. That is, even though a conspiracy to distribute 50 grams or more of crack is "a statutory offense described by the interaction of Sections 846, 841(a)(1), and 841(b)(1)(A)(iii)," id. at 186, the "statutory penalties associated with" this particular statute are found in § 841(b)(1)(A)(iii), so that is the provision that was "modified," id. at 190 & n.6.

As expressly provided by Section 404(b) and Section 3582(c)(1)(B), this Court may modify the sentence of a defendant who was sentenced before August 3, 2010 only "to the extent" the defendant's sentencing exposure would be different under Section

13

Add. 14

2 or Section 3 of the Fair Sentencing Act. See United States v. Barnett, No. 19-CV-0132 (LAP), 2020 WL 137162, at *5 (S.D.N.Y. Jan. 13, 2020) (noting that the First Step Act "does not authorize a plenary resentencing or a reevaluation of the facts found at the time of conviction and sentencing"); United States v. Hegwood, 934 F.3d 414, 418-19 (5th Cir 2019) (noting that the First Step Act does not allow plenary resentencing); Williams, 2019 WL 5791747, at *5 (agreeing with the Government and the "overwhelming majority of courts to address the issue" that the First Step Act does not expressly permit a plenary resentencing); United States v. Jones, No. CR 7:07-CR-84, 2019 WL 3767474, at *6 (W.D. Va. Aug. 9, 2019) ("The court thus concludes, as have the clear majority of courts to have addressed the issue, that a plenary resentencing is not required."); Davis, 2019 WL1054554, at *2 (in rejecting an argument that First Step Act permits plenary resentencing, noting that "[n]owhere does the Act expressly permit the type of plenary resentencing or sentencing anew that Davis advocates"); Potts, 2019 WL 1059837, at *3 (holding that First Step Act does not authorize plenary resentencing); United States v. Brown, No. 07-20195-01, 2019 WL 4126555, at *3 (E.D. Mich. Aug. 30, 2019) (same). Courts have reached this conclusion because permitting plenary resentencing would both (i) provide an unfair "avenue for sentencing adjustments wholly unrelated to Section 404's

14

Add. 15

express authorization to modify a sentence only in a particular
way," and (ii) "carry a significant collateral windfall to all
affected prisoners, reopening every aspect of their original
sentences." United States v. White, 413 F. Supp. 3d 15, 41
(D.D.C. 2019) (internal quotation marks and citation omitted).

The structure of Section 404(b)—allowing only a reduction
in sentence in limited circumstances to a limited class of
prisoners—is analogous to that of 18 U.S.C. § 3582(c)(2), which
provides in relevant part that, "in the case of a defendant who
has been sentenced to a term of imprisonment based on a
sentencing range that has subsequently been lowered by the
Sentencing Commission . . . , the court may reduce the term of
imprisonment . . . ." (Emphasis added). And, the Supreme Court
has found that Section 3582(c)(2) "does not authorize a
sentencing or resentencing proceeding" and that it instead
"provides for the modification of a term of imprisonment by
giving courts the power to 'reduce' an otherwise final sentence
in circumstances specified by the Commission." Dillon, 560 U.S.
at 825. In arriving at that conclusion, the Court looked to the
fact that 28 U.S.C. § 994(a)(2)(C) referred to Section 3582(c)
as a "sentence modification provision" and that the "provision
applies only to a limited class of prisoners—namely, those whose
sentence was based on a sentencing range subsequently lowered by

15

Add. 16

the Commission." Id. at 825-26. Both reasons are equally applicable here to Section 404(b) and Section 3582(c)(1)(B).

The First Step Act also made prospective changes. Prior to the First Step Act, the statutory penalties in Sections 841(b)(1)(A) and 841(b)(1)(B) were increased in cases where the defendant had a prior conviction for a "felony drug offense." Section 401(a) of the First Step Act modified those provisions to require that an offense be a "serious drug felony or serious violent felony." Those amendments were made applicable to an offense committed before the First Step Act's enactment only "if a sentence for the offense has not been imposed as of such date of enactment." See First Step Act § 401(c).

**b. Compassionate Release**

Under Section 3582, the Court "may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

A Court may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, 2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020).

16

Add. 17

Although Courts are not constrained by the relevant Sentencing Commission policy statement, it remains instructive. That statement provides that the BOP may reduce the term of imprisonment if "extraordinary and compelling reasons warrant the reduction," U.S.S.G. § 1B1.13(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," id. § 1B1.13(2); and "the reduction is consistent with this policy statement," id. § 1B1.13(3). While the Court is free to consider other circumstances as well, the Application Note describes some of the circumstances under which "extraordinary and compelling reasons" may exist, as relevant here:

> (A)  Medical Condition of the Defendant. —
>
> > (ii) The defendant is—
> >
> > > (I)    suffering from a serious physical or medical condition,
> > >
> > > (II)   suffering from a serious functional or cognitive impairment, or
> > >
> > > (III)  experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Even if the defendant articulates "extraordinary and compelling reasons" for release, the District Court must consider the factors set forth in Section 3553(a), which include, inter alia, "the nature and circumstances of the

17

Add. 18

offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities." <u>United States v. Roney</u>, __ F. App'x __, 2020 WL 6387844, at *1 (2d Cir. Nov. 2, 2020) (citing 18 U.S.C. § 3553(a)). As the proponent of release, the defendant bears the burden of proving that release is warranted under Section 3582. <u>See</u> <u>United States v. Butler</u>, 970 F.2d 1017, 1026 (2d Cir. 1992).

Relief under the First Step Act is discretionary. Section 404(b) provides that a court "may" reduce a sentence, as long as the defendant is eligible, subject to the limitations set forth in § 404(c). First Step Act § 404, 132 Stat. at 5222. "[A] district court retains discretion to decide what factors are relevant as it determines whether and to what extent to reduce a sentence." <u>Moore</u>, 975 F.3d at 92 n.36 (2d Cir.).

Still, discretion has limits. A decision on a motion for a reduced sentence remains subject to appellate review; where the decision evinces "an erroneous view of the law" or "a clearly erroneous assessment of the evidence," or where it falls outside "the range of permissible decisions," we will vacate. <u>United States v. Borden</u>, 564 F.3d 100, 104 (2d Cir. 2009) (quoting <u>In re Sims</u>, 534 F.3d 117, 132 (2d Cir. 2008)) (articulating the

18

Add. 19

abuse-of-discretion standard); <u>see</u> <u>White</u>, 984 F.3d at 88 ("[T]he
deference afforded discretionary decisions, even those that are
largely unconstrained by statutory language or judicial
precedent, does not mean that such decisions are unfettered by
meaningful standards or shielded from thorough appellate
review." (quotation marks and citations omitted)). Moreover,
although § 404 prescribes no procedure, "sound legal principles"
must guide discretion. <u>White</u>, 984 F.3d at 88 (quotation marks
and citations omitted). Accordingly, while district courts are
not bound to apply the § 3553(a) factors in every First Step Act
case, those factors may often prove useful. <u>See</u> <u>Shaw</u>, 957 F.3d
at 741 ("Familiarity fosters manageability, and courts are well
versed in using § 3553 as an analytical tool for making
discretionary decisions."). The considerations listed
in § 3553(a) may have different weight in the context of a
defendant who is already imprisoned, but they remain sound
guiding principles. Therefore, when reviewing a motion under the
First Step Act § 404, "a district court may, but need not,
consider the [§ 3553(a)] factors." <u>Moore</u>, 963 F.3d at 727 (8th
Cir.); <u>accord</u> <u>Concepcion</u>, 991 F.3d at 290; <u>Mannie</u>, 971 F.3d at
1158 n.18.  <u>United States v. Moyhernandez</u>, 5 F.4th 195, 205 (2d
Cir. 2021) (cert. pending); <u>accord</u> <u>United States v. Mannie</u>, 971
F.3d 1145, 1158 n.18 (10th Cir. 2020) (emphasizing that nothing
in Section 404 "precludes application of common sense,

19

Add. 20

regardless of whether a common-sense consideration also happens to be codified in § 3553").

**III. Discussion**

The Court assumes, without deciding, that Defendant's health conditions constitute "extraordinary and compelling circumstances warranting release" under 18 U.S.C. Section 3582(c)(1)(A) and thus moves on to consider the Section 3553(a) factors.

In determining whether to exercise its discretion to reduce Defendant's sentence under the FSA, the Court will also consider the Section 3553(a) factors.

First, the Defendant's offenses of conviction were exceedingly serious and thus require exceedingly serious punishment. He was the leader of a violent, long-running, and successful drug trafficking enterprise that distributed vast quantities of crack, powdered cocaine, and heroin for almost ten years in the Bronx. In controlling his turf and driving out competitors, Defendant routinely instructed his underlings to engage in gun violence. As set out above in more detail, Defendant provided guns to "enforcers" and ordered them to shoot at various locations on city streets where competitors were selling drugs.

Add. 21

Also as noted above, Defendant ordered his enforcers to shoot various rival drug dealers.  Most significantly, Defendant ordered the murder of Heriberto Diaz, another rival drug dealer; indeed, Defendant obtained a firearm from Steven Young and gave it to Tyrone Glynn, whom he had engaged to murder Diaz.  Glynn and Young both testified at trial that Glynn had the gun and used it to murder Diaz.

While Defendant's counsel do an admirable job of explaining that the FSA reflects Congress' change in attitude toward drug crimes, there is no change in attitude regarding guns or murder.  Murder is murder—the taking of a human life—and this Defendant committed it to protect his commercial drug trafficking interests.  Defendant's crime was most serious and deserves a most serious punishment.  Judge Pauley imposed just that in meting out a sentence of thirty-eight years and four months (instead of the Guidelines Sentence of life).

Second, as Judge Pauley found at sentencing, Defendant remains a danger to public safety. Judge Pauley observed at sentencing that Defendant's friends and family "characterize[d] him as a wonderful dad or a good person" but noted the "shame" that "he didn't show those traits on the street."  Sent. Tr. at 30.  Judge Pauley departed downwardly from the Guidelines sentence of life to impose the "very lengthy incarceration" of thirty-eight years and four months to protect the public from

21

Add. 22

Defendant.  _Id_.  Judge Pauley found that "lengthy incarceration

[was] necessary so that Mr. Defendant does not present a clear

and present danger to the community if he is released. . . . I

cannot permit him to walk free in middle age."  _Id_. at 30-31.

And so Defendant should not walk free at age 52.

While Defendant's counsel has done an admirable job of

describing Defendant's employment while incarcerated and his

many courses and certificates, the fact remains that this 52-

year-old terrorized his fragile community with drugs and guns

for a decade, ordering shots to be fired on public streets, and

ordering the murder of a drug rival for his crass commercial

goals.  The Section 3553(a) factors counsel against a twenty-

some year reduction in sentence and in favor of not "permitting

[this Defendant] to walk free in middle age.

### IV.  Conclusion

Defendant's motions for re-sentencing under the First Step

Act and for compassionate release under 18 U.S.C. Section

3582(c)(1)(A) (dkt. no. 163) are denied.

The Clerk of the Court shall close the open motion.

Dated:    New York, New York
          February 23, 2022

                                    _Loretta A. Presley_
                                    _____
                                    LORETTA A. PRESKA
                                    Senior United States District Judge

22

Add. 23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,


                    -against-                          06 CR 242 (LAP)

SIDNEY BRIGHT,                                              ORDER

                              Defendant.

---

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Defendant Sidney Bright's motion (dkt.
no. 175) for reconsideration of the Court's March 10, 2022 order
(dkt. no. 174) (the "Order") denying his motion for a sentence
reduction and compassionate release pursuant to 18 U.S.C.
§ 3582(c)(2).  For the reasons set forth below, the motion is
denied.

I.    **Legal Standard**

    "A motion for reconsideration is an extraordinary remedy to
be employed sparingly in the interests of finality and
conservation of scarce judicial resources."  Drapkin v. Mafco
Consol. Grp., Inc., 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011)
(citation and internal quotation marks omitted).

    "While the Federal Rules of Criminal Procedure do not
provide for reconsideration motions, such motions are tacitly
accepted in criminal cases in this District by virtue of Local
Crim. R. 49.1(d)."  United States v. Baldeo, 2015 WL 252414, at
*1 (S.D.N.Y. Jan. 20, 2015).  That rule enables a movant to file

1

Add. 24

"[a] motion for consideration . . . within fourteen (14) days after the Court's determination of the original motion" upon "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked shall accompany the motion."  Local Crim. R. 49.1(d).

"The standards for reconsideration among the civil and criminal rules are largely the same."  United States v. Daugerdas, No. 09 CR 581, 2020 WL 4931988, at *2 (S.D.N.Y. Aug. 18, 2020) (quoting United States v. Lisi, 2020 WL 1331955, at *2 (S.D.N.Y. Mar. 23, 2020)).  "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Glob. View Ltd. Venture Cap. v. Great Cent. Basin Expl., L.L.C., 288 F. Supp. 2d 482, 483 (S.D.N.Y. 2003) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).  The Court may also grant the motion to "correct a clear error or prevent manifest injustice."  Id. (quoting Banco de Seguros Del Estado v. Mut. Marine Offs., Inc., 230 F. Supp. 2d 427, 428 (S.D.N.Y. 2002)).  However, "[r]econsideration is not an invitation for parties to 'treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in

2

Add. 25

response to the court's rulings.'" <u>Daugerdas</u>, 2020 WL 4931988,
at *2 (quoting <u>de los Santos v. Fingerson</u>, No. 97 CIV. 3972
(MBM), 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1998)).

**II.  <u>Discussion</u>**

    In arguing for reconsideration, the Defendant sets out
purported "errors of fact" in the Order.  Rather than
constituting findings of fact contrary to those recited in the
Order, however, Defendant cherry picks inconclusive material
from the transcripts of his first and second trials.  For
example, in arguing that he "wanted to take full responsibility
for his actions of distributing narcotics in his community"
(dkt. no. 175 at 2), Defendant cites to his attorney's opening
statement--not evidence and hardly conclusive.  Similarly, when
discussing his responsibility, or not, for providing firearms to
his alleged enforcers or for retrieving the murder weapon,
Defendant cites to trial testimony and a co-defendant's proffer
statement and plea allocution.  (<u>Id.</u> at 3-4.)  None of these
citations comes close to the high standard required in a motion
for reconsideration.

**III.  <u>Conclusion</u>**

    Accordingly, Defendant's motion for reconsideration (dkt.
no. 175) is denied.

Add. 26

      The Clerk of the Court shall mail a copy of this order to

Defendant.

**SO ORDERED.**

Dated:    New York, New York
          July 13, 2022

                          LORETTA A. PRESKA
                          Senior United States District Judge